[Cite as *State ex rel. Tarrier v. Pub. Emps. Retirement Bd.*, 2020-Ohio-681.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Kathy Tarrier, | : | |
| Relator, | : | |
| v. | : | No. 18AP-12 |
| Public Employees Retirement Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on February 27, 2020

**On brief:** *Kathy Tarrier,* pro se.

**On brief:** *Dave Yost*, Attorney General, *Mary Therese J. Bridge* and *Isaac Molnar,* for Ohio Public Employees Retirement Board.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Kathy Tarrier, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Public Employees Retirement Board ("PERB"), to retroactively modify relator's retirement plan with the Ohio Public Employees Retirement System ("OPERS" or "PERS") from the Combined Plan to the Traditional Pension Plan, effective to October 8, 1987, her original date of hire by the Franklin County Public Defender.

{¶ 2} This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court grant relator's request for a writ of mandamus. Specifically, the magistrate concluded relator's May 2003 election to change her retirement plan from the Traditional Pension Plan to the Combined Plan, made pursuant to R.C. 145.191(A), was legally impermissible and therefore relator had a clear legal right to revoke her election.

{¶ 3} Respondent filed objections to the magistrate's decision, and relator filed a memorandum in opposition to respondent's objections. Accordingly, this matter is now before this court for a full, independent review. Pursuant to such review, we may "adopt or reject [the] magistrate's decision in whole or in part, with or without modification[,] * * * hear [the] matter, take additional evidence, or return [the] matter to a magistrate." Civ.R. 53(D)(4)(b).

{¶ 4} Respondent presents one objection to the magistrate's decision in its objection to the magistrate's conclusions of law: the magistrate erred in determining relator's 2003 election to participate in the Combined Plan was legally impermissible.

{¶ 5} We begin with a brief summary of the legislative history and case law leading up to the present matter to provide context to our analysis of relator's claim. In 1976, the General Assembly enacted R.C. Chapter 120, the Ohio Public Defender Act, which established the Ohio Public Defender Commission and authorized counties to create county public defender commissions. *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 4. In accordance with R.C. 120.13(A), on January 8, 1976, the Franklin County Board of Commissioners ("the Commissioners") established the Franklin County Public Defender Commission ("the FCPDC"). *Id.* at ¶ 5. Later that year, the Commissioners approved a resolution to enter into a six-month agreement with the FCPDC to provide legal representation to indigent criminal defendants. *Id.*

{¶ 6} In 1977, pursuant to former R.C. 120.14(A)(1), the FCPDC appointed attorney James Kura as the Franklin County Public Defender. *Id.* at ¶ 6. Kura then hired attorneys and support personnel to form the Franklin County Public Defender's Office ("the FCPDO"). *Id.*, citing *State ex rel. Mallory v. Pub. Emps. Retirement Bd.*, 82 Ohio St.3d 235, 241 (1998). Both the FCPDO, as an employer, and the FCPDO employees paid Social

Security taxes on the employees' wages. *Id.* Furthermore, neither Kura nor the FCPDC considered the FCPDO to be a county agency; thus, the employees of the FCPDO were not treated as "public employees" for purposes of OPERS. *Id.*

{¶ 7} It was not long before various state officials began to question the legality of the manner in which certain county public defender offices operated. *Id.* at ¶ 7. In 1980, the chief of the Administrative Services Section of the Ohio Attorney General's office issued an informal opinion "concluding that employees of county public-defender offices were county employees and should be enrolled in PERS." *Id.*, citing *Mallory* at 236. Subsequently, and based on that informal opinion, the state auditor advised officials in Summit County — the only county other than Franklin County treating employees of its public defender office as private employees — that its public defender office was operating illegally and was not entitled to reimbursement by the state for its operations. *Id.*, citing *Mallory* at 236-37.

{¶ 8} In response to the foregoing concerns, in 1984, the General Assembly enacted R.C. 120.14(F), which authorized county public-defender commissions to contract with non-profit organizations to provide legal representation to indigent criminal defendants. *Id.* at ¶ 8. On December 31, 1984, the FCPDC hired private counsel who drafted articles of incorporation for a non-profit corporation to be named "Franklin County Public Defender" ("the FCPDO Non-profit"). *Id.* The articles of incorporation named the FCPDC as the incorporator and sole member of the corporation and named the five then-current individual members of the FCPDC as initial trustees. *Id.* On January 9, 1985, the FCPDC approved the articles of incorporation and appointed Kura, who held the statutory office of Franklin County Public Defender, as the director of the FCPDO Non-profit. *Id.*

## I.   *The Mallory Decision*

{¶ 9} In 1998, the Supreme Court of Ohio issued the first of several decisions concerning the employment status of individuals employed by the FCPDO (in existence from 1976-1984) and the FCPDO Non-profit (in existence from 1985 onward.) In *Mallory*, the Supreme Court held that any person hired by the FCPDO on or before December 31, 1984 is a public employee entitled to PERS benefits. *Mallory* at 241. In *Mallory*, the Supreme Court granted a writ of mandamus ordering PERB to credit Diane Mallory, a former employee of the FCPDO, with her years of service as a law clerk from 1978 to 1980

and as an attorney from 1982 to 1994. During Mallory's tenure with the FCPDO, she and the FCPDC paid Social Security taxes on her wages, and no OPERS contributions were made either by her or her employer on her behalf. In September 1994, Mallory filed a request for service credit with OPERS. OPERS staff denied her request on the basis she was not a "public employee," and the denial was affirmed by PERB. *Altman-Bates* at ¶ 9, citing *Mallory* at 237-38.

{¶ 10} On appeal first to this court and again before the Supreme Court, PERB argued that Mallory was not a public employee because the FCPDO was a private entity with which Kura had contracted for services. The Supreme Court rejected PERB's argument for two reasons. First, there was no evidence before the court of any contract — either written or oral — between Kura and the FCPDO. *Id.* at ¶ 11, citing *Mallory* at 242. Second, even if such a contract existed, "it would have been invalid under R.C. 2921.442(A)(4), which prohibits a public official from having an interest in the profits or benefits of a public contract entered into by the public entity with which the official is connected." *Id.*

{¶ 11} The Supreme Court further held that R.C. 145.01(A)(2) entitled Mallory to continue her PERS membership after the incorporation of the FCPDO Non-profit following the 1984 amendments to R.C. 120.14. *Id.* at ¶ 12, citing *Mallory* at 245. R.C. 145.01(A)(2), colloquially referred to as the "carryover" provision, defines a "public employee" as "[a] person who is a member of [PERS] and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function."[1] Notably, the *Mallory* decision did not address the status of employees hired for the first time *after* the incorporation of the FCPDO Non-profit in January 1985.

{¶ 12} After the *Mallory* decision was issued, the "Franklin County Public Defender" was declared a county agency, effective as of January 1, 1999. *Id.* at ¶ 13. All current employees as of January 1, 1999, who were hired after December 31, 1984, had their hire date changed to January 1, 1999, including that of relator. Further, from that date forward, all employees, including relator, were enrolled in PERS. *Id.* Thus, after the issuance of the

---

[1] Mallory and other similarly situated employees are sometimes referred to as "carryover employees."

*Mallory* decision and subsequent declaration that the Franklin County Public Defender was a county agency, only employees who were hired from January 1, 1985, through December 31, 1998, were excluded from public employee status — and hence coverage by PERS — at least for the time of their service prior to January 1, 1999.

## II.    The Van Dyke Decision

{¶ 13}  The Supreme Court next addressed the status of FCPDO and FCPDO Non-profit employees as public employees in 2003 when it decided *State ex rel. Van Dyke v. Public Emp. Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123.  Beginning in 1982, Omia Nadine Van Dyke worked for the FCPDO, first as a legal intern, and later as a staff attorney.  In 1985, after the enactment of R.C. 120.14(F) and the incorporation of the FCPDO Non-profit, Van Dyke resigned her position and began working as a staff attorney in the Bureau of Support in the Franklin County Court of Common Pleas, Division of Domestic Relations.  In 1986, Van Dyke resigned her position with the common pleas court and was rehired in April 1986 as a staff attorney with the FCPDO Non-profit, where she worked until 1991.

{¶ 14}  Following the Supreme Court's decision in *Mallory,* PERB credited Van Dyke with her years of service with the FCPDO from February 1982 to November 1985 but refused to credit her for her employment with the FCPDO Non-profit from 1986 to 1991.  Agreeing with PERB, the Supreme Court rejected Van Dyke's claim she was entitled to PERS credit for employment with the FCPDO Non-profit because she was a "carryover" employee under R.C. 145.01(A)(2).  The court concluded when Van Dyke "was reemployed by FCPDO [Non-profit] in April 1986, she was not 'continuing' her employment with a private contractor that was taking over a previously publicly operated function.  Instead, in April 1986, she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function."  *Id.* at ¶ 29.  The court further found Van Dyke "did not 'continu[e] in an unbroken chain of service as an attorney for the county * * * when she returned to the FCPDO [Non-profit] and resumed her duties as a staff attorney.'  Rather, when she began her second period of employment with FCPDO, it was no longer a county agency."  *Id.* at ¶ 30.

### III.    *The Altman-Bates Decision*

{¶ 15}   In May 2016, the Supreme Court issued the next key decision concerning the employment status of individuals employed by the FCPDO and/or the FCPDO Non-profit.   In *Altman-Bates*, the Supreme Court held that any person hired by the FCPDO between January 1, 1985, when the FCPDO Non-profit was formed, and October 1992, when Kura resigned his position as the statutory office holder of Franklin County Public Defender, is a public employee entitled to PERS service credit for his or her service prior to January 1, 1999.  *Altman-Bates* at ¶ 31.

{¶ 16}   The events culminating with the issuance of the *Altman-Bates* decision began in February 2001, when 51 present and former employees of the FCPDO filed for PERS membership and service credit for their service prior to January 1, 1999.  *Id.* at ¶ 14. PERS staff rejected the claims, concluding the Supreme Court's previous holding in *Van Dyke* precluded the claimants' claims based on the assumption that the Supreme Court had ruled in *Van Dyke* persons hired after 1984 were not eligible for PERS coverage prior to January 1, 1999.  *Id.*   Upon appeal to PERB, the hearing examiner agreed, finding the doctrine of collateral estoppel precluded relitigating the status of the FCPDO Non-profit during the post-1984 time period by virtue of *Van Dyke*.   PERB accepted the hearing examiner's recommendation and denied the claimants' request for PERS service credit for the period from January 1, 1985 through December 31, 1998.  *Id.*

{¶ 17}   Upon the claimants' request for a writ of mandamus in this court, we granted a limited writ, directing PERB to issue a new order adjudicating the claims on their merits.  *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 10th Dist. No. 04AP-1293, 2007-Ohio-6594 ("*Davis I*").   The Supreme Court affirmed, stating that "PERB abused its discretion by ruling that our previous decision in *Van Dyke* * * * collaterally estopped [the claimants] from raising their claims for service credit" and specifically holding that collateral estoppel did not apply.   *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 44 ("*Davis II*").   In so finding, the Supreme Court "noted that the only issue in *Van Dyke* had been whether the sole employee bringing that case, who had worked as a staff attorney during two separate time periods, was eligible for PERS service credit during the second time period as a carryover employee" pursuant to the carryover provision of R.C. 145.01(A)(2).  *Altman-Bates* at ¶ 15, citing *Davis II* at ¶ 6-9,

43. Furthermore, the court specifically stated in *Davis II* that it "did not actually decide [the FCPDO's] postincorporation status in either *Van Dyke* or *Mallory*." *Id.*, citing *Davis II* at ¶ 36. Thus, the court granted the claimants a limited writ of mandamus ordering PERB to vacate its order denying claims for PERS service credit and to issue a new order adjudicating the merits of their claims. *Davis II* at ¶ 44.

{¶ 18} Upon remand for adjudication on the merits, proceedings resumed before PERB and the claimants presented additional evidence. *Altman-Bates* at ¶ 16. Following the hearing, the hearing examiner issued a report and recommendation, concluding that during the pertinent time period, the claimants were employed by a non-profit corporation, not a public employer. *Id.* Accordingly, the hearing examiner recommended PERB deny the claims for PERS coverage. *Id.*

{¶ 19} The matter came before PERB on March 17, 2010, and PERB voted to accept the hearing examiner's report and recommendation. *Id.* at ¶ 17. PERB found that, for the relevant time period, "the Franklin County Public Defender was a non-profit corporation that employed Claimants to provide public defender services and was not a public employer for OPERS purposes, and therefore Claimants are not public employees for the time period December 31, 1984, to January 1, 1999." *Id.* Thus, the claimants' requests for PERS service credit were denied by a final administrative decision of PERB.

{¶ 20} Three of the original 51 claimants — Altman-Bates, Neyerlin, and Steele — filed a mandamus action in this court on March 1, 2011.[2] *Id.* at ¶ 18. Subsequently, the court's magistrate granted Melani Anderson leave to intervene as a relator. *Id.* On April 30, 2013, the magistrate issued a decision concluding PERB did not abuse its discretion when it denied the claims for PERS coverage and recommending this court deny relators' request for a writ of mandamus. *Id.* We overruled objections to the magistrate's decision, adopted the magistrate's findings of fact and conclusions of law, and denied the writ. The four relators timely appealed to the Supreme Court.

{¶ 21} On appeal to the Supreme Court, the court observed that unlike in *Mallory*, where the record was bereft of evidence of any contracts between Kura and the office of the

---

[2] Cynthia Davis was one of the original 51 claimants and the first listed in both *Davis I and Davis II*. Because, however, Davis was no longer part of the litigation upon the second action in mandamus being filed in this Court, the name of the case changed from *State ex rel. Davis* to *State ex rel. Altman-Bates*.

Franklin County Public Defender, the record in the matter before it now showed that after the 1984 amendments to R.C. 120.14 and the subsequent formation of the FCPDO Non-profit, the statutory office and the FCPDO Non-profit executed formal written agreements. *Id.* at ¶ 24. There were two such relevant agreements, both dated May 13, 1987. *Id.* at ¶ 25. Pursuant to the first agreement, the FCDPO Non-profit agreed to assume the FCPDC's statutory responsibilities for providing public defender services. *Id.* Pursuant to the second agreement, the FCPDO Non-profit agreed to act as a subcontractor for the FCDPC pursuant to a contract the FCPDC had previously entered into with the city of Columbus to provide such services. *Id.* Both agreements were signed by H. Ritchey Hollenbaugh, as the chairman of the FCPDC, and Kura, as "Director" of "Franklin County Public Defender." *Id.* In *Altman-Bates*, the court succinctly framed the central issue as, when the agreements were entered into, "what position did Kura hold at the time?" *Id.*

{¶ 22} In reaching its answer to the foregoing query, the court first noted Kura was appointed to the statutory office of "Franklin County Public Defender" in 1977. *Id.* at ¶ 26. The court then found the record was devoid of any evidence Kura resigned that office in 1985 when the FCPDO Non-profit was formed or that the FCPDC dissolved the office of the Franklin County Public Defender at that time. *Id.* at ¶ 28. To the contrary, the court declared "the evidence shows that Kura held two positions simultaneously." *Id.* at ¶ 29.

{¶ 23} The court determined this fact was dispositive of the issue before it, holding that:

> [b]ecause Kura was a county official at the same time he was director of the corporation, ***the employees of that corporation who were hired while he held the statutory office*** were employed by a public official, and hence, they ***were public employees***.

(Emphasis added.) *Id.* at ¶ 31. Kura did not resign from his position as the statutory officeholder of the Franklin County Public Defender until October 1992. *Id.* The court found that because the claimants[3] were hired during Kura's tenure, i.e., between 1977 and October 1992, they were "entitled to PERS service credit for their service prior to January 1,

---

[3] Although intervening relator Melani Anderson's hire date was not evident in the record, it was subsequently adduced she was also hired during Kura's tenure as the statutory office holder.

1999."  *Id.*  Accordingly, the court granted the requested writ of mandamus to compel PERB to grant them service credit in PERS for those years.

{¶ 24}   In the aftermath of the Supreme Court's decision in *Altman-Bates*, all Franklin County Public Defender employees who were similarly situated to the claimants in that case, i.e., hired during Kura's tenure, received service credit in PERS for past non-contributing service for the period prior to January 1, 1999.  This category of employees included relator, who in 2016 received 11.25 years of service credit for her service with the FCPDO for the period of October 8, 1987, her original date of hire, to December 31, 1998.  Further, pursuant to R.C. 145.83, Franklin County remitted both the delinquent employee and the delinquent employer contributions for all affected employees.

## IV.    *The Current Dispute*

{¶ 25}   We begin by briefly summarizing the key background facts, which are more fully set forth in the magistrate's decision.  As a preliminary matter we observe OPERS has not objected to the magistrate's findings of fact.  Upon review of same, and with one exception as explained next, we adopt the magistrate's findings of fact as our own.

{¶ 26}   As noted previously, soon after the *Mallory* decision was issued, relator became a member of OPERS and began making employee contributions on January 1, 1999.  At that time there was only one OPERS retirement plan — a traditional, defined-benefit pension plan which is now known as the "Traditional Pension Plan."  Thus, relator and all others employed by the FCPDO as of January 1, 1999 were participants in the Traditional Pension Plan by default.  Finding of fact number five states:  "Relator initially **elected** to participate in the OPERS traditional plan as of January 1, 1999" but this is incorrect as nothing in the record indicates there was an "election."  (Emphasis added.)  Rather, there being only one plan at the time (the Traditional Pension Plan), this was the plan in which relator was placed.  Therefore, we modify finding of fact number five to state "Relator began to participate in the OPERS traditional plan as of January 1, 1999."

{¶ 27}   Within a few years after relator became a member of OPERS, the General Assembly enacted legislation that permitted OPERS to establish two other types of retirement plans in addition to the Traditional Pension Plan.  These other types include a defined-contribution plan (known as the "Member-Directed Plan") and a hybrid plan that

combined aspects of a defined benefit plan and a defined contribution plan (known as the "Combined Plan"[4].)

{¶ 28} Participation in either of the two new plans was limited to new OPERS members and current OPERS members who, as of December 31, 2002, had less than five years of total service credit. R.C. 145.191(A). Eligible OPERS members were not required to elect to participate in either of the two new plans, and if no election was made by June 30, 2003, the OPERS member was "deemed to have elected to continue participating in the PERS defined benefit plan" (i.e., the Traditional Pension Plan). R.C. 145.191(A).

{¶ 29} Because of the post-*Mallory* declaration that the "Franklin County Public Defender" was a county agency effective as of January 1, 1999, as of December 31, 2002 relator had three years of service and was therefore eligible to elect to participate in one of the new plans. On May 27, 2003, relator submitted an electronic form online evincing her election to participate in the Combined Plan. Additionally, she elected to transfer her Traditional Pension Plan account balance to the Combined Plan, as permitted by R.C. 145.191(C), thereby cancelling "all service credit and eligibility for any payment, benefit, or right" under the Traditional Pension Plan. R.C. 145.191(C). Pursuant to R.C. 145.191(E), relator's election was effective as of January 2, 2003, and irrevocable. The record indicates at the time relator elected to participate in the Combined Plan — versus remain in the Traditional Pension Plan by default — she was aware of the post-*Mallory* litigation initiated in February 2001, when the previously discussed 51 present and former employees of the FCPDO filed for PERS membership and service credit for their service prior to January 1, 1999.

{¶ 30} On May 15, 2008, relator contacted OPERS to inquire about changing her retirement plan from the Combined Plan back to the Traditional Pension Plan. Relator met with an OPERS representative on May 28, 2008 to discuss options to purchase plan change

---

[4] Under the Combined Plan, employer contributions are credited to the defined benefit component and investment of employer contributions is managed by OPERS investment professionals. Employee contributions are credited to the defined contribution component and investment of employee contributions is directed by the OPERS member. Further, because only the employer's contributions are allocated to the defined benefit component of the Combined Plan, upon retirement the defined benefit is calculated at 1 percent of final average salary ("FAS") per year of service, versus 2.2% of FAS per year of service under the Traditional Pension Plan.

service credit to effect such a change; however, she chose to remain in the Combined Plan at that time.

{¶ 31}    In 2017, after relator had been granted 11.25 years of service credit for her non-contributing service with the FCPDO for the period of October 8, 1987 to December 31, 1998, in the wake of the *Altman-Bates* decision, relator again contacted OPERS to discuss her retirement plan.  More specifically, relator requested OPERS retroactively change her retirement plan from the Combined Plan to the Traditional Pension Plan with an effective date of October 8, 1987.  OPERS denied relator's request on the basis there is no statutory authority permitting OPERS to retroactively change her retirement plan as requested and because her account had been administered in compliance with Ohio law.

{¶ 32}    On April 9, 2018, relator filed this mandamus action.

{¶ 33}    " '[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.' " *State ex rel. Lucas Cty. Bd. of Mental Retardation & Dev. Disabilities v. Pub. Emps. Retirement Bd.,* 123 Ohio St.3d 146, 2009-Ohio-4694, ¶ 15, quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14.  The parties agree relator has no statutory right of appeal from the denial by OPERS of her request.

{¶ 34}    The Supreme Court has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of law.  *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983).  Further, to be entitled to the requested writ of mandamus, relator must establish respondent abused its discretion. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, ¶ 14.  An abuse of discretion connotes a decision which is unreasonable, arbitrary, or unconscionable.  *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, ¶ 11.  Further, respondent has not abused its discretion if there is "some evidence" to support its determination.  *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 19.

{¶ 35}    As previously noted, the magistrate concluded relator's May 27, 2003 election to change her retirement plan from the Traditional Pension Plan to the Combined

Plan, made pursuant to R.C. 145.191(A), was legally impermissible and, therefore, relator had a clear legal right to revoke her election. The magistrate reached this conclusion after determining relator was ineligible to make the election because the "inchoate *Altman-Bates* [service] credit" of 11.25 years was "a sufficient right to preclude her from making that election under the five-year limitation" set forth in the statute. (Magistrate's Decision at 6.) In other words, the magistrate found although technically relator had only three years of service credit as of December 31, 2002, this was so only "because she had been improperly excluded from OPERS participation for the first 11.25 years of employment with FCPD." (Magistrate's Decision at 6.)

{¶ 36} In its objection, respondent argues the magistrate erred in concluding relator's 2003 election to participate in the Combined Plan was legally impermissible. More specifically, respondent asserts the magistrate's conclusion that the future service credit relator would receive in 2016 for her non-contributing service with the FCPDO as a result of the *Altman-Bates* decision precluded relator from making her 2003 election is in direct conflict with the plain language of R.C. 145.191 and the related Ohio Administrative Code rules. Respondent further asserts such a conclusion is contrary to the mechanism by which non-contributing service is granted pursuant to R.C. 145.483. In essence, respondent's position is there simply is no statutory authority for OPERS to retroactively undo relator's 2003 election to participate in the Combined Plan; therefore, respondent is powerless to do so. For the following reasons, we sustain the sole objection presented by respondent and deny the requested writ of mandamus.

{¶ 37} We have previously stated, "it is well-established that the Ohio retirement systems, as statutorily created entities, have no authority beyond what is conferred to them under their governing statutes." *Hansford v. Pub. Emps. Retirement Sys.*, 170 Ohio App.3d 603, 2007-Ohio-1242, ¶ 9 (10th Dist.), citing *Dreger v. Pub. Emps. Retirement Sys.*, 34 Ohio St.3d 17, 21 (1987); *Erb v. Erb*, 75 Ohio St.3d 18, 22 (1996); *Cosby v. Cosby*, 96 Ohio St.3d 228, 232, 2002-Ohio-4170. Thus, "unless its governing statutes grant the authority, OPERS is powerless to perform the act." *Hanford* at ¶ 9.

{¶ 38} The primary goal of statutory construction is to give effect to the General Assembly's intent in enacting the statute. *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 13, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. To

determine legislative intent, we first look to the language of the statute. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). We consider the statutory language in context, construing words and phrases according to the rules of grammar and common usage. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 16, citing *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, ¶ 34. Courts lack authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow constructions. *State ex rel. Massie v. Bd. of Edn. of Gahanna-Jefferson Pub. Schools*, 76 Ohio St.3d 584, 588 (1996). Rather, a court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10. If the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *Hairston* at ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. In short, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 39} Further, "[a]ll statutes relating to the same general subject matter must be read in *pari materia*, and in construing these statutes in *pari materia*, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995), citing *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372 (1994); *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, ¶ 25 (noting statutory provisions related to the same subject matter should be construed harmoniously unless they are irreconcilable). "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997), citing *MacDonald v. Bernard*, 1 Ohio St.3d 85, 89 (1982).

{¶ 40} Chapter 145 of the Revised Code both creates and governs OPERS. Central to the within matter is R.C. 145.191, which provides in full as follows:

> (A) Except as provided in division (F) of this section, a public employees retirement system member or contributor who, ***as***

*of December 31, 2002, has less than five years of total service credit* is eligible to make an election under this section. A member or contributor who is employed in more than one position subject to this chapter is eligible to make only one election. The election applies to all positions subject to this chapter.

Not later than June 30, 2003, an eligible member or contributor may elect to participate in a PERS defined contribution plan. Unless a form evidencing an election is received by the system on or before that date, a member or contributor to whom this section applies is deemed to have elected to continue participating in the PERS defined benefit plan.

(B) An election under this section shall be made in writing on a form provided by the system and filed with the system.

(C) *On the request of a member or contributor who made an election* under this section, the system shall *credit to the plan elected the accumulated contributions* standing to the credit of the member or contributor *in the employees' savings fund* and *cancel all service credit and eligibility for any payment, benefit, or right under the PERS defined benefit plan.*

(D) For each member or contributor who elected under this section to participate in a PERS defined contribution plan and made a request under division (C) of this section, any additional deposits that were made by the member or contributor prior to April 6, 2007, under the version of division (C) of section 145.23 of the Revised Code as it existed immediately prior to that date shall be credited to the defined contribution plan.

(E) *An election under this section is effective as of January 1, 2003, and,* except as provided in section 145.814[5] of the Revised Code or rules governing the PERS defined benefit plan, *is irrevocable on receipt by the system.*

---

[5] R.C. 145.814 permits members who made an election under R.C. 145.191 to initiate a plan change on a "going forward" basis, versus the "retroactive" basis relator seeks. R.C. 145.814(A) through (C). This section of the Ohio Revised Code also permits a member to have her service credit "transferred" to a new plan, but such a transfer is subject to "the additional liability to the system" amount being paid by the member. R.C. 145.814(D).

(F) An election may not be made under this section by a member or contributor who is either of the following:

(1) A PERS retirant who is a member under division (C) of section 145.38 of the Revised Code;

(2) A PERS law enforcement officer or a PERS public safety officer.

(Emphasis added.)

{¶ 41} Conspicuously absent from the foregoing statute is any exception to R.C. 145.191(E), which provides that an election pursuant to this section is effective as of January 1, 2003 and is irrevocable on receipt by the system. This is so even though R.C. 145.83, the section governing payment of and credit for delinquent contributions, was already in existence at the time R.C. 145.191 was made effective on October 1, 2002. Thus, we must presume the General Assembly was aware of the possibility a PERS member with less than five years of total service credit as of December 31, 2002, might choose to make an election under R.C. 145.191, yet at some point in the future be entitled to non-contributing service credit pursuant to R.C. 145.83 for any number of reasons, resulting in a "retroactive" total service credit of five or more years. Despite the potential for this scenario, the General Assembly did not see fit to include any exceptions to the irrevocable nature of an election made pursuant to R.C. 145.191 even though it could have done so.

{¶ 42} This conclusion is further buttressed by the 2012 passage of S.B. No. 343, which amended R.C. 145.32, the provision governing age and service retirement eligibility, effective January 7, 2013. Pursuant to the amendment, retirement eligibility requirements were changed and PERS members were separated into three "groups" — A, B and C — defined in the statute under R.C. 145.32(A), (B), and (C), respectively. The particular details of the enactment are not pertinent to the issue before us. What is pertinent is the fact that subsection (D) of the amended statute specifically provides that service credit obtained pursuant to R.C. 145.483 is to be considered for purposes of determining which of the groups a given member is in. *See* R.C. 145.32(D). Clearly, the legislature knew how to make non-contributing service "retroactive" for purposes of R.C. 145.32, and it could have done so for purposes of R.C. 145.191 by including a similar provision.

{¶ 43} Finally, we observe that at the time R.C. 145.191 was made effective on October 1, 2002, the *Mallory* decision had already been issued and the dispute between FCPDO employees and PERB culminating with the *Altman-Bates* decision was currently underway. It cannot be that the General Assembly was completely oblivious to the ongoing dispute between the FCPDO and its employees prior to and during the relevant timeframe when R.C. 145.191 was enacted. All the foregoing circumstances serve to solidify the conclusion the General Assembly could have provided for exceptions to R.C. 145.191(E) to permit revocation of an election upon the contingent circumstance of a member receiving non-contributing service credit in the future, yet consciously chose not to do so. Although we may wish to question the wisdom on the part of the legislature for failing to make provisions for this possibility, such is not the purview of this court.

{¶ 44} Instead, we find R.C. 145.191(A) clearly and unambiguously provides an OPERS member "who, as of December 31, 2002, has less than five years of total service credit is eligible to make an election under this section" and such an election "is irrevocable on receipt by the system." Being plain and unambiguous, the statute must be applied, not interpreted. *Weimer*, at paragraph five of the syllabus. On December 31, 2002, relator had less than five years of total service credit and therefore she was eligible to make an election under R.C. 145.191(A), which she did on May 27, 2003. Furthermore, her election was irrevocable pursuant to R.C. 145.191(E). Thus, contrary to the conclusion of the magistrate, it was not legally impermissible for relator to have elected to change from the Traditional Pension Plan to the Combined Plan on May 27, 2003, and we therefore reject the magistrate's conclusion on this point.

{¶ 45} Furthermore, relator's assertion notwithstanding, the Supreme Court's decision in *Altman-Bates* fails to lend support to her contention she should be permitted to unwind her 2003 election made pursuant to R.C. 145.191 under the holding of that case. More specifically, in her response to the objection to the magistrate's decision filed by respondent, relator asserts "Franklin County and OPERS have ignored the law of the case, *Altman-Bates*, and continue to resist complying with the clear directive of the Ohio Supreme Court to place Relator and others similarly situated in the position they would have been in had Franklin County and Respondent complied with the law." (Relator's Response to Objection to the Magistrate's Decision at 5.) But this is not what the Supreme

Court held or directed in *Altman-Bates*. Rather, as set forth above, the court held as follows:

> Because Kura[6] was a county official at the same time he was director of the corporation, the employees of that corporation who were hired while he held the statutory office were employed by a public official, and hence, they were public employees. * * * Accordingly, ***[the claimants] are entitled to PERS service credit for their service prior to January 1, 1999***.

(Emphasis added.)  *Altman-Bates* at ¶ 31.

{¶ 46}  Nowhere in the *Altman-Bates* decision is a directive to place all FCPDO employees similarly situated to the claimants in that case in the position they would have been in had they been treated as public employees all along.  Instead, the court's holding is limited to the directive that the claimants — and by extension, the similarly situated employees who had been hired during Kura's tenure — were entitled to service credit for the years they worked at the FCPDO prior to January 1, 1999.  As discussed previously herein, relator was an employee similarly situated to the claimants in *Altman-Bates*, and in 2016 she properly received 11.25 years of service credit for her service with the FCPDO for the period of October 8, 1987, her original date of hire, to December 31, 1998.  Simply stated, relator has received all she was entitled to receive pursuant to the holding in *Altman-Bates*.

{¶ 47}  As an alternative argument, relator asserts if she cannot be placed back in the Traditional Pension Plan, at the very least her defined contribution account should be credited for the amount paid by Franklin County pursuant to R.C. 145.483 for her 11.25 years of non-contributing service.  But OPERS is constrained from doing so by the clear terms of section 145-1-31 of the Ohio Administrative Code, which prescribes how delinquent contributions paid pursuant to R.C. 145.483 must be credited.  Ohio Adm.Code 145-1-31 provides, in relevant part:

> (A) This rule amplifies section 145.483 of the Revised Code.
>
> (B) For purposes of this rule:

---

[6] As noted previously, James Kura was the statutory officeholder for the Franklin County Public Defender.

* * *

(3) "Noncontributing service" means a period of employment or service for which employee contributions pursuant to section 145.47 of the Revised Code were due, but not deducted by an employer, because the service was neither exempt nor excluded.

* * *

(F) Except as provided in paragraph (F)(4) of this rule:

(1) **Employee contributions paid by the employer pursuant to section 145.483** of the Revised Code and this rule **shall be held in the employers' accumulation fund** as defined in **division (B) of section 145.23** of the Revised Code.

* * *

(G) If a member has contributions in more than one retirement plan, the contributions paid by the employer pursuant to section 145.483 of the Revised Code shall be credited to the plan in which the noncontributing service would have been earned, if it were remitted at the time the service occurred. **If the member no longer has contributions in the retirement plan in which the noncontributing service would have been earned,** *the contributions paid by the employer pursuant to section 145.483 of the Revised Code shall be credited to the plan in which the member is now contributing*.

(Emphasis added.)   Ohio Adm.Code 145-1-31.   Division (B) of section 145.23 of the Revised Code, referenced by Ohio Adm.Code 145-1-31(F)(1), further provides in pertinent part as follows:

(B) The employers' accumulation fund is the fund in which shall be accumulated *the reserves for the payment of all pensions and disability benefits* **payable as provided in this chapter.** The amounts paid by any employer under section 145.48 of the Revised Code shall be credited to the employers' accumulation fund. *Amounts paid by an employer under section 145.483 of the Revised Code*

> ***shall be credited to the employers' accumulation
> fund*** * * *[7].

(Emphasis added.)  R.C. 145.23(B).

{¶ 48}    Thus, pursuant to Ohio Adm.Code 145-1-131(F)(1) and (G), all amounts paid by an employer under R.C. 145.483 for non-contributing service, whether they be amounts paid for employer contributions or employee contributions, must be credited to the employers' accumulation fund, i.e., the defined benefit fund, and further be credited to the plan in which the member is contributing as of the time payment under R.C. 145.483 is made.    The amounts paid by the FCPDO for relator's non-contributing service were properly credited to the defined benefit portion of her Combined Plan account, and nothing in R.C. Chapter 145 gives OPERS the authority to credit relator's employer-paid delinquent contributions in any other manner.

{¶ 49}    In summary, relator has been granted the service credit to which she is entitled pursuant to *Altman-Bates*, and the amount paid by Franklin County for her non-contributing service has been properly credited to the defined-benefit portion of her Combined Plan under the law.   There is no statutory authority that would permit respondent to unwind relator's May 27, 2003 election to switch from the Traditional Pension Plan to the Combined Plan, and respondent has not abused its discretion in refusing to do so.  Relator has not shown she has a clear legal right to the relief she requests, nor that respondent is under a clear legal duty to perform the act requested; therefore, relator has not shown she is entitled to a writ of mandamus for the relief she seeks.

{¶ 50}    We acknowledge our decision today results in an outcome that may seem unfair.  Indeed, relator pointedly argues in both her opening brief and her response to respondent's objection that respondent's position in this matter is "patently unfair," "leaves Relator in the worst of all possible worlds," and "results in a windfall to OPERS," i.e., because all of the amounts paid by Franklin County for her non-contributing service was credited to the defined-benefit portion of her Combined Plan account.  (Relator's Brief at

---

[7] R.C. 145.23(B) provides an exception for amounts paid under R.C. 145.483 on behalf of members participating in a PERS defined contribution plan, i.e. the Member Directed Plan, so that such amounts may be credited to the defined contribution fund defined in R.C. 145.23(G).  This exception is not applicable to relator as she is a paricipant in the Combined Plan.

8; Relator's Response to Objection at 2; Relator's Brief at 8)  But these are all arguments based on equity, not the law.  And, as the magistrate correctly pointed out, equitable arguments are inapplicable in an action in mandamus.  *State ex rel. Barbee v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 01AP-1266, 2002-Ohio-6279, ¶ 31-34.  We, therefore, adopt the magistrate's conclusions of law on this issue.

{¶ 51}  Hence, although the result of our decision may seem harsh, this court is constrained by the law as it is written, not as we would like it to be applied to individuals on an ad hoc basis.  For it is well-settled that " ' "subjective principles of equity and fundamental fairness" ' " do not determine whether a writ of mandamus shall issue; rather, the question is whether there is a clear legal duty to perform the requested act.  *Pipoly* at ¶ 22, citing *VanCleave v. School Emps. Retirement Sys.*, 120 Ohio St.3d 261, 2008-Ohio-5377, ¶ 26, quoting *State ex rel. Schwaben v. School Emp. Retirement Sys.*, 76 Ohio St.3d 280, 285 (1996).  In this case, we find there is not.

{¶ 52}  In conclusion, after an examination of the magistrate's decision and an independent review of the record pursuant to Civ.R. 53, we sustain respondent's sole objection to the magistrate's decision.  We find that, with the exception of the phrase "elected to participate" in finding of fact number five, the magistrate has properly determined the pertinent facts, and we adopt them as our own.  We further adopt the magistrate's conclusions of law regarding relator's equitable claims of promissory estoppel and equitable estoppel being inapplicable to this action in mandamus, and regarding relator's claim for breach of fiduciary duty being subsumed into her request for a writ of mandamus.  However, in accordance with our decision, we reject the magistrate's remaining conclusions of law.  Accordingly, relator's request for a writ of mandamus is denied.

*Objection sustained;*
*writ of mandamus denied.*

SADLER, P.J., and BROWN, J., concur.

_____

APPPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| The State ex rel. Kathy Tarrier, | : | |
| | | |
| Relator, | : | |
| | | |
| v. | : | No.  18AP-12 |
| | | |
| [Ohio] Public Employees Retirement Board,: | | (REGULAR CALENDAR) |
| | | |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 22, 2019

*Kathy Tarrier,* pro se.

*Dave Yost,* Attorney General, *John J. Danish,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

{¶ 53} Relator, Kathy Tarrier, brings this original action requesting that this court issue a writ of mandamus ordering respondent, the Ohio Public Employees Retirement Board, to modify relator's terms of participation in the Ohio Public Employees Retirement System ("OPERS"), granting relator credit for participation in OPERS' traditional pension plan, rather than her current credit in the OPERS' combined plan.  The board determined that relator was not eligible to rescind her previous election of the combined plan because

she had duly elected, within five years commencing participation in OPERS, to transfer her contributions from the traditional plan to the combined plan.

Findings of Fact:

{¶ 54} 1.  Relator is a member of OPERS.

{¶ 55} Relator began working for the Franklin County Public Defender's Office ("FCPD") in 1987.

{¶ 56} For the first 12 years of her employment with FCPD, her employer did not consider relator and other, similarly situated, employees as eligible for OPERS membership and did not contribute to OPERS on relator's behalf.

{¶ 57} The classification of FCPD employees was the object of prolonged litigation culminating in the Supreme Court of Ohio's decision in *State ex rel. Mallory v. Pub. Emps. Retirement Bd.*, 82 Ohio St.3d 235 (1998).  As a result of that decision, relator and other FCPD employees became OPERS members and began contributing to the system, including employee and employer contributions, as of January 1, 1999.

{¶ 58} Relator initially elected to participate in the OPERS traditional plan as of January 1, 1999.

{¶ 59} The traditional plan is a "defined benefit" pension plan, providing a fixed monthly retirement benefit based on a formula incorporating years of service and final average salary.

{¶ 60} OPERS initiated two new retirement plans in 2003, offered as alternatives to the traditional plan. One of these, the "member-directed" plan, is a straightforward "defined-contribution" plan.  The other is the OPERS combined plan at issue in this case.

{¶ 61} The OPERS combined plan is a hybrid retirement plan offering both a defined-benefit and a defined-contribution component. Under the defined-benefit component, a portion of member and employer contributions continue to be managed by OPERS and yield a retirement benefit based on final average salary and years of service. Because only part of contributions is allocated to this aspect of the plan, the defined benefit is lower than in the traditional plan: 1 percent of final average salary per year of service, as opposed to 2.2 percent in the traditional plan. The balance of the member and employer contributions go to a self-directed investment account, broadly comparable to

defined-contribution retirement plans such as IRAs and 401(k) accounts. As with these other defined-contribution retirement accounts, funds available to an employee after retirement may vary with the success of the investments selected within the self-managed account.

{¶ 62} Only members within fewer than five years' service credit in the traditional plan as of December 31, 2002, were eligible to elect to convert their service credit to the combined plan. R.C. 145.191(A). Members with more than five years' service were not eligible to abandon the traditional plan by converting to the combined plan. 10. On May 27, 2003, relator elected to participate in the OPERS combined plan, thereby canceling her service credit and eligibility in the traditional plan. At that time, she had fewer than five years of contributing service.

{¶ 63} Relator contacted OPERS in 2008 to inquire about changing her plan from the combined plan back to the traditional plan. This would have required a purchase of service credit in the traditional plan with a concomitant out-of-pocket expense to relator. Relator did not choose to undertake the plan conversion at that time.

{¶ 64} Litigation regarding the status of the FCPD employees continued after the Supreme Court's 1998 decision in *Mallory,* with FCPD employees seeking credit for non-contributing service prior to January 1, 1999. The Supreme Court eventually rendered a decision in *State ex rel. Altman-Bates v. Public Emps. Retirement Bd.,* 148 Ohio St.3d 21, 2016-Ohio-3100, granting such credit for past non-contributing service.

{¶ 65} After the *Altman-Bates* decision, FCPD remitted the retroactive contributions required to fund the affected employees' retirement benefits for their noncontributing years of service.

{¶ 66} Pursuant to *Altman-Bates,* relator received 11.25 years of service credit for her service with the FCPD for the period from her initial hire of October 8, 1987 to December 31, 1998, the last day of service before she became a member pursuant to *Mallory.*

{¶ 67} Relator is currently credited, for her *Altman-Bates* credited service between 1987 and 1999, with a contribution fulfilling the defined-benefit component of her combined plan for service between 1987 and 1998. She will receive 1 percent of her final average salary for each year of service in this period upon retirement.

{¶ 68} For the *Altman-Bates* period between 1987 and 1998, FCPD made retroactive contributions for both the employer and employee shares of OPERS contributions at the appropriate contribution rates for those years of service. These contributions would have fulfilled the rate required to support a retirement benefit of 2.2 percent of final average salary for each of these years under the traditional plan.

{¶ 69} Relator received no credit to her self-managed investment account in the combined plan for her service between 1987 and 1998 despite retroactive contributions from FCPD for those years that would have supported a full contribution for either the combined plan or the traditional plan.

{¶ 70} Relator again contacted OPERS in 2017 to request that OPERS retroactively place her back in the traditional plan for the entirety of her service. OPERS refused on the basis that there is no statutory authority for such retroactive change of plan status, and that relator could, if she desired, use her combined plan balance and a very substantial out-of-pocket contribution to purchase service in the traditional plan.

{¶ 71} Respondent agrees that relator has exhausted her administrative remedies and has no appeal from the board's final determination.

Discussion and Conclusions of Law:

{¶ 72} The board is vested with authority over service credit determinations. R.C. 145.01(A). Mandamus is the appropriate remedy, where a statutory right of appeal does not exist, to correct an abuse of discretion by an administrative body. *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 24, citing *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219. There is no statutory right to appeal the board's denial of service credit, and mandamus is therefore an appropriate remedy in this case. *Id.,* citing *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760.

{¶ 73} On this basis, and due to the fact that the board does not contest in this action that relator has exhausted her administrative remedies and has no right to appeal or other "plain and adequate remedy in the ordinary course of the law," R.C. 2731.05, the magistrate concludes that this court has subject-matter jurisdiction over this mandamus action.

{¶ 74} To obtain a writ of mandamus, relator must establish that the board abused its discretion by denying her request to convert the totality of her service to the traditional plan. *See, generally, Davis* at ¶ 25. "A clear legal right exists * * * where the [board] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990). While the term "abuse of discretion" generally connotes an unreasonable, arbitrary, or unconscionable attitude on the part of a tribunal or administrative body, it is fundamental that no judicial or quasi-judicial body has within its power the discretion to commit a prejudicial error of law. *State v. Akbari,* 10th Dist. No. 13AP-319, 2013-Ohio-5709, citing *State v. Beechler,* 2nd Dist. No. 09-CA-54, 2010Ohio-1900, ¶ 70; *Pontius v. Riverside Radiology & Interventional Assocs.,* 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 15; *Hirsi v. Davis Creek Auto Sales,* 10th Dist. No. 15AP415, 2016-Ohio-7569, ¶ 41. As with any action for a writ of mandamus, relator bears the burden of providing evidence that she has a clear legal right to convert to the traditional plan, and that the board has a clear legal duty to extend service credit on those terms. *See, generally, State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967).

{¶ 75} The magistrate preliminarily notes that relator has attempted to apply to this matter various arguments sounding in equity. These are inapplicable in a mandamus action, which in Ohio is a statutorily created action premised upon the presence of clear *legal* rights and duties. R.C. 2731.01 et seq.; *State ex rel. Habe v. S. Euclid*, 56 Ohio St.3d 117 (1990); *State ex rel. Barbee v. Bur. of Workers' Comp.*, 10th Dist. No. 01AP-1266 (Nov.19, 2002). The magistrate therefore does not consider relator's arguments premised on promissory estoppel and equitable estoppel. The magistrate further finds that relator's arguments regarding a breach of fiduciary duty by OPERS are essentially subsumed into relator's argument that she is legally entitled to retract her participation in the combined plan and the board has a legal duty to retroactively reinstate her in the traditional plan. The magistrate therefore finds that the sole question before him is the legal status of relator's 2003 election to convert past service and elect future service in the combined plan.

{¶ 76} R.C. 145.191 provides that an OPERS member who, as of December 31, 2002, had fewer than five years of service credit, is eligible to elect participation in one of the two new pension plans, the combined plan and the member-directed plan. Respondent argues that, as of December 31, 2002, and even as of the date of relator's election on May 27, 2003, relator had fewer than five years of service credit because relator had not begun contributing to OPERS until January 1, 1999 as a result of the *Mallory* decision. Relator chose to transfer her four and one-half years of credit in the traditional plan and go forward in the combined plan. This action cancelled all past traditional plan service credit and eligibility under the traditional plan. R.C. 145.191(C). Respondent further points out that, pursuant to R.C. 145.191(E), relator's election was irrevocable upon receipt by OPERS.

{¶ 77} Relator's argument, which the magistrate finds to be well-taken, is that as of May 27, 2003, relator did not have fewer than five years of service credit insofar as the effective impact the election would have on her plan benefits. She had fewer than five years contributing credit because she had been improperly excluded from OPERS participation for the first 11.25 years of employment with FCPD. Relator thus had *received* fewer than five year's credit because she had not begun contributing pursuant to *Mallory* until January 1, 1999. Relator, however, actually had eligibility for an excess of 16 years of service at that time, and the fact that she had fewer than five years contributing credit was in no way the result of any volitional effort on her part to forego contributing for the credit to which she was entitled. It is clear that, if relator had, after *Mallory* but before the *Altman-Bates* decision, requested service credit for her pre-1999 service, OPERS would not have granted such credit. As the Supreme Court held in *Altman-Bates,* "[the public defender] was a county official at the same time he was director of the corporation, the employees of that corporation who were hired while he held the statutory office were employed by a public official, and hence, they were public employees. * * * Accordingly, [employees] are entitled to PERS service credit for their service prior to January 1, 1999." *Id.* at ¶ 31.

{¶ 78} The question is whether that inchoate *Altman-Bates* credit was an absolute nullity at the time relator made her 2003 election, or whether to the contrary it is a sufficient right to preclude her from making that election under the five-year limitation

of R.C. 145.191(C). The magistrate concludes that the latter is the case. Whatever the purpose of the of the five-year limitation on conversions in R.C. 145.191(C), relator now finds herself in the position of having compulsorily converted more time than was permissible out of the traditional plan and into the combined plan.

{¶ 79} Respondent argues that relator's situation is expressly addressed by Ohio Adm.Code 145-1-31(G), which provides that, when a member is awarded contributions for past non-contributing service, "[i]f the member no longer has contributions in the retirement plan in which the noncontributing service would have been earned, the contributions paid by the employer pursuant to section 145.483 of the Revised Code shall be credited to the plan in which the member is now contributing." Under this regulation, respondent argues, relator was granted non-contributing service credit under R.C. 145.483 covering the period from October 8, 1987 to December 31, 1998, and when the credit was properly granted, it could only be placed in the plan in effect at the time the non-contributing service was awarded, in the event, the combined plan. This argument is correct as far as it goes but circumvents the question of whether relator's May 2003 election to switch plans was itself legal. The magistrate has concluded that it was not, and that relator's years of service prohibited her from making the election. As a result, Ohio Adm.Code 145-1-31(G) cannot apply to put contributions for past non-contributing service into a plan in which relator cannot legally find herself.

{¶ 80} Relator has a clear legal right to undo her May 2003 election, which was legally impermissible, and be placed back in the position she would occupy had she continued in the traditional plan. Having retroactively placed relator in the traditional plan, it follows that the contributions for past non-contributing service awarded under *Altman-Bates* and paid by the FCPD to OPERS must, under Ohio Adm.Code 145-1-31(G), be placed in the plan in which the member is now contributing or should have been contributing.

{¶ 81} The magistrate therefore recommends this court issue a writ ordering respondent to place relator in the traditional retirement plan for the totality of her service and credit all current and past contributions, whether they be for contributing or noncontributing service, into that plan, and calculate relator's retirement benefits accordingly.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).