[Cite as *Ruf v. Ohio Pub. Emps. Retirement Sys.*, 2021-Ohio-4389.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christine S. Ruf, | : | |
| Relator-Appellant, | : | No. 20AP-330 |
| | | (C.P.C. No. 19CV-1684) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Public Employees Retirement System, | : | |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 14, 2021

**On brief:** *Oberholtzer & Filious, L.P.A.,* and *John C. Oberholtzer*, for appellant. **Argued:** *John C. Oberholtzer.*

**On brief:** *Dave Yost,* Attorney General, *Isaac Molnar*, and *Mary Therese J. Bridge*, for appellee. **Argued:** *Samuel A. Peppers.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Relator-appellant, Christine S. Ruf, appeals a judgment entered by the Franklin County Court of Common Pleas denying appellant's request for a writ of mandamus ordering respondent-appellee, Ohio Public Employees Retirement System ("OPERS"), to stop withholding payments from her retirement account and to refund any monies withheld. Because appellee is statutorily required to recoup overpayments arising from appellant's son enrollment in the incorrect OPERS health care plan, appellant is not entitled to the requested writ and we affirm the trial court judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}  Appellant began receiving an OPERS retirement benefit in 1999.  At that time, appellant's adult, permanently disabled son was eligible for health care coverage through OPERS as her dependent, and appellant enrolled him in the "OPERS Health Care Plan." (Cert. Record at 7.)  Appellant does not dispute that her son was then enrolled in Medicare, beginning in 2001.  (Appellant's Brief at 8, 18; Reply Brief at 9, 15-17.)

{¶ 3}  By letter dated April 4, 2014, appellee asked appellant to validate her son's eligibility in the OPERS Health Care Plan.  In response, appellant sent appellee a letter stating that her son "is still disabled and receiving Social Security Disability benefits" and that he had been eligible for those benefits since 2001.  (Cert. Record at 44.)  Appellant attached to the letter two statements from the Social Security Administration dated November 2008 and April 2013 showing the cash benefit her son received, and two notices dated December 2003 and March 2012 from the Social Security Administration finding her son's disability "continuing" and explaining that benefits recipients could work during a "trial work period(s)" and continue to receive disability payments as well as "[c]ontinuation of Medicare" coverage.  (Cert. Record at 48-50, 53-55.)  Appellant additionally attached a page from what appears to be a 2014 notice or statement from the Social Security Administration explaining an adjustment to her son's benefit amount.  (Cert. Record at 48, 53.)  The 2014 document states, in pertinent part:

> **How much Will I Get And When?**
> - Your monthly amount (before deductions) is      $850.00
> - The amount we deduct for Medicare medical insurance is      $0.00
>   (If you did not have Medicare as of Nov. 14, 2013, or if someone else pays your premium, we show $0.00.)
> - The amount we deduct from your Medicare prescription drug plan is      $0.00
>   (If you did not elect withholding as of Nov. 1, 2013, we show $0.00.)

(Cert. Record at 57.)  Based on the information provided, appellee confirmed appellant's son was eligible to continue coverage in the OPERS health care plan.

{¶ 4}  Effective January 1, 2016, a change in the OPERS administrative code required all benefit recipients and dependents to enroll in Medicare Parts A and B at the first eligible date and provide OPERS with evidence of the Medicare enrollment within 30 days.  *See* Ohio Adm.Code 145-4-30(G).  The benefit recipient's eligibility for Medicare disqualified him or her from receiving the OPERS Health Care Plan under Ohio Adm.Code

145-4-30 but the recipient could still receive a monthly allowance through a Health Reimbursement Arrangement ("HRA") account. Ohio Adm.Code 145-4-30(A) and (G); Ohio Adm.Code 145-4-60(C).

{¶ 5} The 2016 OPERS health care open enrollment statement sent to appellant directed Medicare participants to review a section explaining the HRA. The HRA section explains that OPERS recipients and/or dependents enrolled in Medicare Parts A and B must enroll in an individual Medicare medical plan through the OPERS "Medicare Connector" to receive a monthly allowance from OPERS. In bold, it states, "[i]f you fail to enroll, you will not have any group medical or prescription coverage" for the upcoming year. (Cert. Record at 37.) In a chart describing coverage options, the document states,

> [p]articipants under age 65 and not eligible for Medicare will be enrolled in the OPERS Retiree Health Plan administered by Medical Mutual. Eligible participants (recipient, spouse and/or eligible children) who are enrolled in Medicare Parts A and B, excluding re-employed retirees and their spouses, will receive a monthly deposit into a Health Reimbursement Arrangement (HRA) account. This will only occur upon enrollment in a medical plan offered through the OPERS Medicare Connector administered by OneExchange.
>
> * * *
>
> Note:
>
> * * *
>
> • In order to receive a monthly HRA deposit, a participant must be enrolled in Medicare Parts A and B and enroll in an individual medical plan through OneExchange.

(Cert. Record at 38.) The document also noted that appellee's records showed that appellant would soon turn 65 and be eligible for Medicare Parts A and B, and that upon that occurrence she "must enroll in Medicare Parts A and B and select an individual medical plan through OPERS Medicare Connector in order to receive a monthly HRA allowance from OPERS" and that failure to do so would result in not having any group medical or pharmacy coverage available through OPERS. (Cert. Record at 38.)

{¶ 6} A 2017 OPERS health care open enrollment statement showed appellant had enrolled in an HRA, but her son had not; he continued to be enrolled in a group health care plan through Medical Mutual. The document again states, "Participants not-yet-eligible for Medicare will be enrolled in the OPERS Retiree Health Plan administered by Medical

Mutual. Participants enrolled in Medicare Parts A and B * * * will receive a monthly deposit into an HRA. Enrollment in a medical plan * * * is required to receive an HRA allowance." (Cert. Record at 34.) The document further notes that a person enrolled in Medicare Parts A and B and enrolled in the corresponding OPERS medical plan and receiving an HRA allowance "will not be eligible for the OPERS group medical pharmacy/plan." (Cert. Record at 34.)

{¶ 7} A 2018 OPERS health care open enrollment statement again showed appellant enrolled in an HRA and her son enrolled with Medical Mutual. The statement includes the same description of coverage as the 2017 statement, noted above.

{¶ 8} By letter dated May 15, 2018, appellee asserted it had received information that appellant's son is eligible to participate in the Medicare program. Appellee required appellant to provide appellee certain information, including a Social Security Administration statement with her son's Medicare approval date and effective dates of coverage, to avoid termination of appellant's son's medical enrollment. Appellant provided appellee with a 2018 Social Security Administration statement that showed her son was eligible for Medicare beginning March 2001.

{¶ 9} Based on the documentation appellant provided, appellee determined that appellant had failed to notify appellee of her son's enrollment in Medicare within 30 days of receiving coverage as required by OPERS rules. Appellee terminated appellant's group medical coverage, including enrolled dependents. The letter stated that such a termination would be "effective June 1, 2016." (Cert. Record at 18-19.) Due to the coverage termination, appellee determined that it overpaid prescription claims in the amount of $30,938.86 and appellant overpaid health care premiums in the amount of $4,934.72, for a net remaining balance of $26,004.14 owed to appellee. According to the letter, appellant could repay the amount by check, or appellee would begin deducting monthly amounts from appellant's retirement benefits.

{¶ 10} Appellant, through counsel, replied by letter asserting she notified appellee in 2014 about her son, and, if appellee did not place him in the correct plan, that error should be "placed upon" appellee. (Cert. Record at 16.) Appellee replied to appellant that, in 2016, pursuant to administrative rules, her son was no longer eligible to participate in the OPERS Health Care Plan since he was eligible for Medicare Parts A and B, and she was

required to enroll him in a health care plan through the OPERS Connector to be eligible to receive a monthly HRA allowance. Appellee further explained that it was required by statute to recover the resulting overpayment from her retirement benefits. Appellee sent appellant notices outlining the change in her benefits.

{¶ 11} Appellant filed an initial complaint against appellee on February 26, 2019 seeking declaratory and injunctive relief. Appellee moved to dismiss the complaint, and, in response, appellant filed an amended complaint on April 25, 2019 adding claims for mandamus and monetary relief. In her mandamus claim, appellant asserted:

> In 2014, Defendant had a duty to inform the Plaintiff that she was to enroll in and provide the Defendant with evidence of the Child's Medicare coverage after she sent them documentation that supported her Child's disability, Social Security Disability Benefits, and Medicare medical insurance.
>
> Defendant had a duty to instruct Plaintiff that the Child was to be placed on a correct plan for Medicare.
>
> * * *
>
> WHEREFORE, the Plaintiff prays that * * * a writ of mandamus be issued directing the Defendant to stop withholding payments and to refund any monies withheld.

(Am. Compl. at 3-4.)

{¶ 12} Appellee moved to dismiss the amended complaint. The trial court dismissed appellant's claims for injunctive, declaratory, and monetary relief and preserved the mandamus claim.

{¶ 13} On September 3, 2019, the parties filed a joint motion for a briefing schedule requesting the trial court update the schedule to reflect that only the mandamus claim remained. The memorandum in support explained that mandamus cases are decided based upon the administrative record, and that if the motion was granted, appellee would "file the certified record within twenty-one days thereafter[.]" (Sept. 3, 2019 Joint Mot. at 2.) Based on the joint motion, the trial court amended the case schedule to include an October 18, 2019 deadline for filing the certified administrative record and initial November briefing deadlines.

{¶ 14} Appellee filed a certified record of the administrative proceedings on October 16, 2019. About a week later, appellant moved to supplement the record with three exhibits. Appellee supplemented the certified record on November 5, 2019, and appellant

withdrew her motion to supplement. Upon the agreement of the parties, the trial court extended the briefing deadlines to December and a non-oral hearing date to January 2, 2020.

{¶ 15} On December 3, 2019, appellant filed a brief asserting R.C. 2731.06 required a "peremptory mandamus or an alternative writ." (Dec. 3, 2019 Brief at 1.) Within it, appellant argued that appellee "accrued no overpayment from respondent"; appellant "sufficiently notified [appellee] of her son's enrollment in Medicare" in 2014; and appellant "did not have a statutory duty to enroll in medical coverage through the OPERS connector." (Capitalization adjusted.) (Dec. 3, 2019 Brief at 4-5.)

{¶ 16} The same day, appellant filed a motion to supplement the record with her own affidavit. Appellee objected to appellant's motion and also filed a separate brief in opposition to the merits of appellant's request for mandamus. In its brief in opposition, appellee argued that appellant could not be entitled to a writ of mandamus to compel appellee to repay the amounts that appellee was required, by statute and its rules, to recoup, and that appellant failed to demonstrate the requirements of mandamus were met.

{¶ 17} Appellant filed a reply, noting she would "not add any factual allegations" in her brief and "the certified record reflect[s] all the factual information necessary for [the trial court] to render a decision in this case." (Dec. 30, 2019 Reply at 2.) Appellant then argued that she had "satisfied her burden of informing OPERS with all relevant information necessary for OPERS to select the appropriate plan for [her son] at their discretion," that appellee "fails to point to any statute or duty that compels [appellant] to disenroll her son in one plan and reenroll him in another," and that appellee "failed to notify [appellant] that her son was required to change plans." (Reply at 3-4.) Finally, appellant argued, "in the alternative, [the trial court] can also render a decision in [appellant]'s favor, based on constitutional grounds" since appellee's "conduct in repeatedly failing to sufficiently notify the Petitioner of her son's lapse in eligibility in their medical plan and then retroactively applying a recoupment without sufficient warning constitutes a violation of procedural due process." (Reply at 4.)

{¶ 18} Appellee moved to strike appellant's constitutional due process argument since appellant had not raised this argument in the amended complaint or her opening brief and instead improperly raised this argument for the first time in her reply brief. Appellant

replied contending the reply brief "merely reframes th[e] notice argument within a constitutional lens to rebut the arguments raised in [appellee's] Brief." (Jan. 9, 2019 Obj. to Mot. to Strike at 3.)

{¶ 19} On February 4, 2020, the parties filed a "joint motion to vacate remaining schedule," including future scheduled pretrial and trial dates. (Feb. 4, 2020 Joint Mot. at 2.) The parties again asserted that "mandamus cases are decided based on the administrative record," and the administrative record of this case had been submitted. (Feb. 4, 2020 Joint Mot. at 2.) Therefore, the parties stated that the trial court "has all the requisite information needed to render a decision on [appellant's] sole remaining claim." (Feb. 4, 2020 Joint Mot. at 2.) The trial court thereafter vacated the original case schedule, including the scheduled pre-trial and trial dates.

{¶ 20} On May 7, 2020, the trial court issued a decision and judgment entry denying appellant's motion to supplement the record with her personal affidavit and denying appellant's application for a writ of mandamus. In doing so, the trial court found appellant essentially asserted that appellee abused its discretion in finding appellant accrued an overpayment since, in her view, appellee had sufficient notice of her son's Medicare enrollment and such notice required appellee to "unilaterally enroll" her son in the proper plan. (Decision & Entry at 7.) The trial court concluded that that appellant failed to demonstrate both that appellee denied her a clear legal right and that appellee had a clear legal duty to perform as appellant requested.

{¶ 21} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 22} Appellant submits five assignments of error for our review:

1. The trial court erred, as a matter of law, because it abused its discretion when it denied Appellant's application for a writ of mandamus.

2. The trial court erred, as a matter of law, when it denied Appellant's writ because in doing so, the court denied Appellant constitutional due process under the law and in the proceeding as outlined by Ohio Admin. Code 145-2-23.

3. The trial court erred, as a matter of fact, in denying Appellant's application for a writ of mandamus when it determined that Appellant did not notify Appellee that her son was on Medicare.

4. The trial court erred, as a matter of law, in failing to give the Appellant reasonable written notice of the intent to offer the Certified Record into evidence and the Appellant a fair opportunity to object to the Certified Record.

5. The trial court erred, as a matter of law, when it denied Appellant's Motion to Supplement the Record with an Affidavit.

## III. STANDARD OF REVIEW

{¶ 23} "Mandamus is the appropriate remedy to challenge a decision by OPERS, because there is no statutory right to appeal." *State ex rel. Domhoff v. Ohio Pub. Emp. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, ¶ 12. "To prevail in this mandamus case, appellants must establish a clear legal right to the requested relief, a clear legal duty on the part of OPERS to provide that relief, and the lack of an adequate remedy in the ordinary course of the law." *Id.* at ¶ 13. "Appellants must prove that they are entitled to the writ by clear and convincing evidence." *Id.*

{¶ 24} To show that they are entitled to the requested writ, appellants must demonstrate that OPERS abused its discretion. *Id.* at ¶ 14; *State ex rel. Sales v. Ohio Pub. Emp. Retirement Bd.*, 156 Ohio St.3d 433, 2019-Ohio-1568, ¶ 14. In the context of a mandamus action, OPERS abused its discretion if it entered an order that was not supported by some evidence. *State ex rel. Powell v. Ohio Pub. Emp. Retirement Sys.*, ___Ohio St.3d___, 2021-Ohio-4030, ¶ 12. *See, e.g., Hamby v. Ohio Pub. Emp. Retirement Sys.*, 10th Dist. No. 08AP-298, 2008-Ohio-5068, ¶ 15 (explaining that to determine whether appellant has a clear legal right to a writ of mandamus, the court must determine whether the retirement system abused its discretion by entering a decision that is not supported by "some evidence.").

{¶ 25} An appellate court is tasked with reviewing the decision of the trial court to determine if it abused its discretion in denying the writ. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 20AP-21, 2020-Ohio-4147, ¶ 26, citing *State ex rel. Altman-Bates v. Pub. Emp. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 23.

## IV. ANALYSIS

{¶ 26} For clarity of analysis, we will first address appellant's fourth and fifth assignments of error concerning record issues before considering appellant's first, second,

and third assignments of error addressing issues of errors of fact and law in the trial court decision and her constitutional due process argument. Having reviewed appellant's claimed errors, the certified record, and applicable law, we find the trial court did not abuse its discretion in denying appellant's requested writ of mandamus.

## A. The Certified Record (Fourth and Fifth Assignments of Error)

{¶ 27} In her fourth assignment of error, appellant contends the trial court erred, as a matter of law, in failing to give appellant reasonable written notice of the intent to offer the Certified Record into evidence and a fair opportunity to object to the Certified Record as required under Evid. R. 902(11). We disagree.

{¶ 28} Evid.R. 902(11) states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" with respect to "[c]ertified [d]omestic [r]ecords of a [r]egularly [c]onducted [a]ctivity." Under this rule, "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record - and must make the record and certification available for inspection - so that the party has a fair opportunity to challenge them." Evid.R. 902(11).

{¶ 29} Appellant has not provided any legal authority applying Evid.R. 902(11) with respect to a certified record for purposes of a mandamus action, and appellee counters that under R.C. 145.27(E), signed copies of public employee retirement system records "shall be received as true copies of the system's records in any court or before any officer of this state." Regardless, the record shows appellee did provide reasonable written notice of the intent to offer the record and made the record available for inspection, and appellant had a fair opportunity to challenge the record. The parties filed a joint motion requesting an updated schedule wherein appellee discussed filing the certified record, and the trial court updated the record to include a new filing date for the certified record. Appellant moved to supplement the record, which resulted in appellee adding the requested documents to the certified record. Finally, appellant affirmatively stated to the trial court, "the certified record reflect[s] all the factual information necessary for [the trial court] to render a decision in this case" and also agreed the trial court "has all the requisite information needed to render a decision on [appellant's] sole remaining claim." (Reply at 2; Feb. 4, 2020 Joint Mot. at 2.) For the reasons above, we find appellant's assertion that appellee

failed to give appellant reasonable written notice of the intent to offer the certified record into evidence and a fair opportunity to object to the record to lack merit.

{¶ 30} Accordingly, appellant's fourth assignment of error is overruled.

{¶ 31} In her fifth assignment of error, appellant contends the trial court erred by denying her motion to supplement the record with her personal affidavit. Appellant does not dispute appellee's assertion that mandamus cases are to be decided on the administrative record, and that in determining whether OPERS abused its discretion a reviewing court should be limited to the evidence that was presented to OPERS. However, she argues exclusion of the affidavit was in error here since the affidavit "is based entirely on the administrative record"—"[n]one of the factual evidence incorporated in the [a]ffidavit was beyond the scope of the materials contained in the [c]ertified [r]ecord"— and the facts and evidence on which it is based were all "presented to OPERS before [they] made the determination." (Appellant's Brief at 23-24.)

{¶ 32} Considering the arguments and the affidavit at hand, we find appellant did not demonstrate she was prejudiced by the exclusion of an affidavit that merely restated evidence already in the certified record. *See Seley v. G. D. Searle & Co.*, 67 Ohio St.2d 192, 210 (1981) ("error does not support reversal of a judgment unless such error is prejudicial"); Civ.R. 61; App.R. 12(D). We note appellant in her reply brief attempts to assert "not everything referenced in the [a]ffidavit * * * was made part of the [c]ertified [r]ecord." (Reply at 20.) However, she fails to provide any legal support corresponding with this new position, and we decline to craft an argument on her behalf. *See J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55; App.R. 16(A)(7); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 33} Accordingly, appellant's fifth assignments of error is overruled.

### B. Error of Fact (Third Assignment of Error)

{¶ 34} In her third assignment of error, appellant contends the trial court erred, as a matter of fact, in denying the writ when it determined appellant did not notify appellee that her son was on Medicare. For the following reasons, we disagree.

{¶ 35} "OPERS * * * offers its retirees health insurance, R.C. 145.58(B), including medical, prescription-drug, vision, and dental plans." *Sherman v. Ohio Pub. Emp.*

*Retirement Sys.*, 163 Ohio St.3d 258, 2020-Ohio-4960, ¶ 2. The OPERS board is required to adopt rules establishing eligibility for any group health insurance coverage provided for retirees, and eligibility determinations "shall be made in accordance with the rules." R.C. 145.58(A). The administrative rules established by OPERS set up health care plans based on whether the benefit recipient is "pre-medicare" or "medicare-eligible." *See* Ohio Adm.Code 145-4-30 & 145-4-60.

{¶ 36} As the name implies, the pre-Medicare plan is only available to eligible recipients and dependents "who are not yet eligible for coverage under Medicare." Ohio Adm.Code 145-4-30(A). The administrative code mandates that "all enrolled benefit recipients and dependents shall enroll in medicare parts A and B at the benefit recipient or eligible dependents first eligible date." Ohio Adm.Code 145-4-30(G)(1). Enrollees in Medicare are required to provide OPERS with notice of the coverage: "[a] benefit recipient or dependent approved for early medicare coverage shall enroll in and provide the retirement system with evidence of the medicare coverage not later than thirty days after the recipient is notified of coverage by the centers for medicare and medicaid services." Ohio Adm.Code 145-4-30(G)(2). Medicare-eligible benefit recipients and dependents are provided access to a monthly allowance through an HRA account. Ohio Adm.Code 145-4-60(C).

{¶ 37} Here, it is undisputed that appellant's son is an eligible dependent for OPERS health care coverage generally under the definition provided in the administrative rules. *See* Ohio Adm.Code 145-4-09(B). It is also undisputed in this case that appellant's son has been enrolled in Medicare since 2001, and, after the administrative rule changes in 2016, became ineligible for the OPERS pre-Medicare group health care plan and instead should have been enrolled in the Medicare-eligible HRA. With this assignment of error, appellant essentially argues that she did properly notify OPERS under Ohio Adm.Code 145-4-30(G)(2), and therefore OPERS should have enrolled him in the correct plan and should correspondingly absorb the loss from their own error.

{¶ 38} Initially, we note that appellant provides no authority in support of her clear right to retain the benefit of the error she asserts here. To the contrary, R.C. 145.563(B) states:

> If any person who is a member, former member, contributor,
> former contributor, retirant, beneficiary, or alternate payee

> * * * *is paid any benefit or payment* by the public employees retirement system, including any payment made to a third party on the person's behalf, *to which the person is not entitled,* the benefit or payment *shall be repaid* to the retirement system by the person or third party. * * * If the person or third party fails to make the repayment, *the retirement system shall withhold the amount or a portion of the amount due* from any benefit or payment due the person or the person's beneficiary under this chapter, or may collect the amount in any other manner provided by law.

(Emphasis added.)  In other words, a benefit recipient is statutorily obligated to repay OPERS for any payment or benefit to which he or she "is not entitled," and OPERS is statutorily obligated to recoup those overpayments.  *See* R.C. 145.563(B).  Therefore, appellant's contention that she gave OPERS proper notice would not justify a writ of mandamus ordering OPERS "to stop withholding payments and to refund any monies withheld" since her son was enrolled in the wrong health care plan and was not entitled to those benefits or payments.  (Am. Compl. at 4.)

{¶ 39} Moreover, viewed under the standard employed in mandamus cases, the merits of appellant's notice argument fail on the record.  Appellant argues that "on or about May 5, 2014, [appellant] sent to [a]ppellee documents that supported her son's disability, Social Security Disability Benefits, and Medicare Medical Insurance," including the date of her son's first enrollment (2001).  (Appellant's Brief at 18; Reply at 15-16.)  According to appellant, by indicating in her 2014 letter that her son was receiving disability benefits through the Social Security Administration, it is "common knowledge in the realm of healthcare providers that individuals collecting Social Security Disability for twenty-four months become eligible for and are automatically enrolled in Medicare Parts A and B."  (Appellant's Reply at 15.)  Appellant also asserts the 2014 letter "clearly displays" her son's benefits with "specific dollar amounts deducted for both Medicare medical insurance and Medicare prescription drug plans."  (Reply at 15.)

{¶ 40} Appellee asserts that the documents provided by appellant in 2014, at most, put appellee on notice that appellant's son received social security benefits generally and never disclosed he was enrolled in Medicare Parts A and B or the date he was first eligible to be enrolled.  Appellee contends eligibility for social security benefits is not synonymous with eligibility for Medicare Parts A and B.

{¶ 41} We agree with appellee that the record contains "some evidence" to support appellee's determination that appellant did not properly notify it of her son's enrollment in Medicare. *Powell* at ¶ 12 (noting that contrary evidence is immaterial if there is some evidence in support of the board's decision.). The only evidence appellant points to, which is from 2014, does not specifically state her son was enrolled in Medicare, does not give a specific enrollment date, and indicates "$0.00" in deductions for Medicare. (Cert. Record at 44-57.) As a result, the trial court did not error in finding appellant failed to notify OPERS of her son's enrollment in Medicare as required by Ohio Administrative Code 145-4-30(G).

{¶ 42} Accordingly, appellant's third assignment of error is overruled.

### C. Errors of Law (First Assignment of Error)

{¶ 43} In her first assignment of error, appellant contends the trial court erred as a matter of law and abused its discretion when it denied appellant's application for a writ of mandamus. This assignment of error challenges two aspects of the trial court's decision: (1) whether, without having held a hearing, the basis of the trial court decision is flawed or unclear; and (2) whether the trial court properly held that appellant could not demonstrate entitlement to the writ of mandamus.[1]

#### 1. *Basis of the court's decision/lack of hearing*

{¶ 44} Appellant argues this court should find the trial court erred by denying appellant's application "without first allowing some type of hearing to determine the disputed facts between the parties." (Appellant's Brief at 14.) Appellant appears to believe the hearing before the trial court was necessary to "establish whether [a]ppellee owed a duty to [a]ppellant." (Appellant's Brief at 12.) Appellant further argues that without the hearing, "it is difficult to determine the basis of the court's decision," which necessitates reversal in line with *State ex rel Hrelec v. City of Campbell*, 146 Ohio App.3d 112 (7th Dist. Sept. 2001). We disagree.

{¶ 45} First, appellant did not raise the issue of the necessity of a hearing to the trial court. To the contrary, appellant affirmatively stated to the trial court, "the certified record reflect[s] all the factual information necessary for [the trial court] to render a decision in

---

[1] We note appellant did not directly argue this second point in her principal appellate brief. However, appellee discussed this issue in its appellate brief, and appellant made corresponding arguments in her reply brief. In these circumstances, we see no disadvantage to appellee and will therefore consider the issue.

this case" and also agreed the trial court "has all the requisite information needed to render a decision on [appellant's] sole remaining claim." (Reply at 2; Feb. 4, 2020 Joint Mot. at 2.) Based on the parties' joint motion, the trial court vacated the original case schedule, including vacating the scheduled pre-trial and trial dates, and there is no record of appellant otherwise requesting a hearing or objecting to the trial court's new case schedule. Therefore, appellant waived any claimed error regarding the lack of a hearing and, alternatively, invited her claimed error. *See Reasoner v. City of Columbus*, 10th Dist. No. 04AP-800, 2005-Ohio-468, ¶ 12 ("Appellant's failure to raise the issues in the trial court constitutes a waiver of the error claimed."); *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359 (1994), citing *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 313 (1987) ("Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.")

{¶ 46} Second, we disagree with appellant the trial court decision lacks a sound basis. Appellant's only cited authority, *Hrelec*, does not support this position. In *Hrelec*, a trial court refused to adopt the decision of a magistrate and, in doing so, provided "no findings of fact or conclusions of law to support that decision." *Id.* at 116. The appellate court reviewing the trial court's decision remarked,

> [d]ue to the brevity of the judgment entry in this case, it is difficult to discern the basis of the trial court's decision to deny [relator]'s petition. This certainly gives rise to the appearance that the trial court abused its discretion by reversing the magistrate. Consequently, our review is limited to the stipulations of fact which were presented to the magistrate, and whether the magistrate correctly applied the law to those facts, in order to determine whether the court abused its discretion by reversing that decision.

*Id.* at 117. Thereafter, the appellate court found the trial court abused its discretion denying the relator's request for a writ of mandamus based on the stipulated record.

{¶ 47} *Hrelec* does not discuss the necessity of a hearing at all let alone in the context of a mandamus action challenging an OPERS health care plan determination. Instead, the appellate court in *Hrelec* was satisfied in deciding the case based on the stipulated record before the magistrate, which tends to undermine appellant's argument since that is essentially what the trial court did in the instant case. *See Id.* at 118-22. Furthermore, unlike *Hrelec*, it is not difficult to determine the basis of the trial court's decision here. The

trial court's decision incorporated facts derived from the certified record and cited to those facts to make legal conclusions as to why appellant is not entitled to the requested writ of mandamus.  Considering all the above, appellant's first assignment of error as it relates to the hearing issue and the basis of the trial court's decision lacks merit.

### 2. *Determination that appellant failed to meet the standard to issue a writ of mandamus*

{¶ 48} Appellant first contends she had a clear legal right to the requested relief in this case since, in her view, she complied with appellee's requests for information, and appellee still placed her son on the wrong plan, allowed him to remain on the wrong plan for a significant amount of time, and never notified her that her son would not be covered by the plan until a substantial amount of overpayments had already accrued.  Appellant additionally asserts that appellee had a clear legal duty to pay health insurance for her and her son and enroll them in the correct health care plans since appellee has a "contractual relationship" with appellant and is obligated to enroll her son in the correct health care plan under Ohio Adm.Code 145-1-10(B).  (Reply at 13-14.)  Appellant further contends that appellee is not entitled to recoup any alleged overpayment because any such overpayment was created solely be appellee.

{¶ 49} Appellant again focuses on her view that appellee was at fault for her son remaining on the incorrect plan,[2] but she fails to address appellee's statutory obligation to recoup "any benefit or payment" made to eligible health care recipients "to which the person is not entitled," under R.C. 145.563.  As stated by this court recently in *State ex rel. Tarrier v. Pub. Emp. Retirement Bd.*, 10th Dist. No. 18AP-12, 2020-Ohio-681, ¶ 37:

> "it is well-established that the Ohio retirement systems, as statutorily created entities, have no authority beyond what is conferred to them under their governing statutes." *Hansford v. Pub. Emps. Retirement Sys.*, 170 Ohio App.3d 603, 2007-Ohio-1242, ¶ 9, 868 N.E.2d 708 (10th Dist.), citing *Dreger v. Pub. Emps. Retirement Sys.*, 34 Ohio St.3d 17, 21, 516 N.E.2d 214 (1987); *Erb v. Erb*, 75 Ohio St.3d 18, 22, 661 N.E.2d 175 (1996); *Cosby v. Cosby*, 96 Ohio St.3d 228, 232, 2002-Ohio-4170, 773 N.E.2d 516.  Thus, "unless its governing statutes

---

[2] We note the record supports the opposite view in this case.  As previously discussed, some evidence supports appellee's determination that appellant did not properly notify OPERS of her son's enrollment in Medicare as required by the administrative rules.  Additionally, the 2016, 2017, and 2018 healthcare open enrollment statements notified appellant that Medicare recipients, such as her son, needed to take action to enroll in the HRA and were ineligible for pre-Medicare healthcare coverage.  (Cert. Record at 29-30, 34, 37-38.)

grant the authority, OPERS is powerless to perform the act."
*Hansford* at ¶ 9.

We further emphasized that "equitable arguments are inapplicable in an action in mandamus," and even when "the result of our decision may seem harsh, this court is constrained by the law as it is written, not as we would like it to be applied to individuals on an ad hoc basis." *Id.* at ¶ 50-51.

{¶ 50} In this case, some evidence supports appellee's determination that appellant's dependent received health care benefits or payments to which he was not entitled. Under these circumstances, the applicable law mandated appellee recover the payments. *See* R.C. 145.563; *Tarrier* at ¶ 37. Considering all the above, appellant has not established by clear and convincing evidence a clear legal right to the requested relief or a clear legal duty on the part of OPERS to provide that relief. *Domhoff* at ¶ 12-13; *Sales* at ¶ 14; *Powell* at ¶ 12. Therefore, the trial court did not abuse its discretion in denying appellant's requested writ of mandamus.

{¶ 51} Accordingly, the first assignment of error is overruled.

### D. Constitutional Due Process (Second Assignment of Error)

{¶ 52} In her second assignment of error, appellant contends the trial court erred in denying the writ because "in doing so, the court denied [a]ppellant constitutional due process under the law and in the proceeding as outlined by Ohio Adm.Code 145-2-23." (Appellant's Brief at 5-6, 14.) Specifically, appellant argues that disability retirement benefits granted by appellee are a statutorily created property interest protected by the due process clause, and that appellee's "conduct in repeatedly failing to notify the [appellant] of her son's lapse in eligibility in their medical plan and then retroactively applying a recoupment without sufficient warning constitutes a violation of procedural due process." (Appellant's Brief at 15.) Appellant further argues, for the first time in this case, that appellee did not follow the correct notification steps under Ohio Adm.Code 145-2-23 after (what she describes as) "terminating [a]ppellant's son's disability coverage." (Appellant's Brief at 5-6, 17.)

{¶ 53} Appellee counters that appellant never raised the Ohio Adm.Code 145-2-23 notice issue to the trial court and only raised a general constitutional due process argument to the trial court in a reply brief, which justified the trial court in not addressing the issue. According to appellee, in these circumstances, this court need not address the improperly

raised arguments. If this court addresses the arguments, appellee contends we should still reject them on the merits. Specifically, appellee contends there is no "protected property" interest in, or legal right to, being enrolled in a *specific* OPERS health care plan, so "procedural due process is simply not at issue here." (Appellee's Brief at 33-34.) Appellee further argues that even if due process is implicated, OPERS provided sufficient notice to appellant and was required to recoup overpayments. Finally, appellee asserts that Ohio Adm.Code 145-2-23 expressly governs termination of disability benefits under a section of the Revised Code involving whether a member is disabled and not the statute controlling here (R.C. 145.58, establishing health care for OPERS retirants). Appellee emphasizes that it never questioned whether appellant's son was disabled and asserts her son continues to receive OPERS health care coverage to this day (just, presumably, not through the "pre-medicare" plan).

{¶ 54} We decline to consider appellant's constitutional arguments in the first instance. Generally, a party is not permitted to raise new arguments in its reply brief, and a court "need not address" those improperly raised issues. *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, ¶ 24. *See, e.g., State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18-19 (declining to address constitutional issue raised for the first time in a reply brief).

{¶ 55} Furthermore, "[a]n appellant cannot change the theory of his case and present new arguments for the first time on appeal." *Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 28-29. A reviewing court will generally refuse to consider issues on appeal that were not initially raised before the trial court. *State v. Awan*, 22 Ohio St.3d 120, 122 (1986); *Niehaus v. The Columbus Maennerchor*, 10th Dist. No. 07AP-1024, 2008-Ohio-4067, ¶ 55. Along these same lines, a reviewing court "need not address the merits" of constitutional claims improperly raised in mandamus actions. *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, ¶ 41-42 (declining to address relator-appellant's argument that OPERS denied her constitutional right to due process where the appellant did not raise these issues in her complaint or amended complaint, and appellants did not expressly or impliedly consent to litigation of these claims).

{¶ 56} Here, as indicated by appellee, appellant did not raise the constitutional due process argument in her amended complaint or initial brief to the trial court, but instead raised this argument for the first time in her reply brief to the trial court. Appellee moved to strike the late arguments, and the trial court did not consider those arguments in its decision.[3] On appeal, appellant has neither assigned the trial court's action in this regard as error nor provided legal support demonstrating the trial court abused its discretion in declining to review arguments raised for the first time in a reply brief. Furthermore, in this case appellant did not raise the issue of notice under Ohio Adm.Code 145-2-23 at all to the trial court but instead waited to raise this issue for the first time on appeal. As the constitutional due process issue presented in this assignment of error was not properly raised and addressed in the trial court, we decline to consider it for the first time on appeal. *Id.*; *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20 (declining to consider issue raised for the first time on appeal and overruling the assigned error on that basis.).

{¶ 57} Accordingly, appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 58} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and JAMISON, JJ., concur.

————————————

---

[3] The appellate record indicates the trial court granted appellee's Jan. 7, 2020 motion to strike.