**[Cite as *State ex rel. Banks v. Indus. Comm.*, 2023-Ohio-4672.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Tanisha S. Banks, | : | |
| Relator, | : | |
| | : | No. 21AP-341 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 21, 2023

**On brief:** *Nager, Romaine & Schneiberg Co., LPA, Jerald A. Schneiberg*, and *C. Bradley Howenstein*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Anna Isupova*, for respondent, Industrial Commission of Ohio.

**On brief:** *Meyers Roman, Friedberg & Lewis*, and *Steven P. Dlott*, for respondent, AAA Stamping, Inc.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Tanisha S. Banks ("Banks"), has filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to deny respondent, AAA Stamping, Inc.'s, motion to terminate Banks's temporary total disability ("TTD") compensation or alternatively to issue a limited writ of mandamus and remand this matter back to the commission for rehearing on the merits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate found that the commission did not abuse its discretion, that the commission's order was

supported by some evidence, and recommended that this court deny Banks's petition for a writ of mandamus. (Mar. 17, 2023 Mag.'s Decision at 9-13.)

{¶ 3} On March 22, 2023, Banks filed her objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} On December 18, 2018, Banks was injured in the course of her employment with AAA Stamping, Inc., ("AAA") when her hand was caught in a press. Her workers' compensation claim was allowed for the following physical conditions: avulsion fracture of middle phalanx, left third finger; amputation through middle phalanx, left second finger; two-thirds loss of use of left second finger. On the date of the injury, Dr. Nick Lukens completed a Physician's Report of Work Ability ("MEDCO-14"), which stated that Banks could return to work on January 19, 2019 if cleared by orthopedics. The commission awarded Banks TTD compensation from December 19, 2018 through February 12, 2019.

{¶ 5} On December 28, 2018, Banks was on her way to AAA when she encountered the plant manager on the street. (Record at 244-52.) The plant manager inquired about how Banks was doing after her injury, but Banks did not respond. Instead, Banks handed her uniform to the plant manager and asked about obtaining her retirement funds. *Id.* Banks later completed her retirement forms and obtained the money she had contributed to her retirement account. (Record at 268-70.)

{¶ 6} On January 9, 2019, AAA mailed a certified letter to Banks offering her light-duty employment in accordance with any work restrictions that may be imposed by her physician. (Record at 237-38.) AAA offered her a sedentary office administrative position that involved only right-handed work with pay identical to Banks's prior terms of employment. *Id.*

{¶ 7} On January 18, 2019, Banks's treating physician, Dr. Harry Hoyen, completed a MEDCO-14 that indicated that Banks could work with the restriction of no use of her left hand.

{¶ 8}   On April 15, 2019, Kathryn Wozniak, PA-C, reported in a MEDCO-14 that while Banks could not perform her former position she could return to work with restrictions.

{¶ 9}   After having received no response from Banks on their initial letter offering light-duty employment, AAA mailed another letter to Banks on April 19, 2019, offering her the same office assistant position it had offered her in January.  Banks did not respond to the letter.

{¶ 10}  On June 4, 2019, AAA filed a motion to terminate Banks's TTD compensation.  On August 1, 2019, a district hearing officer ("DHO"), granted AAA's motion and terminated Banks's TTD compensation, effective December 28, 2018, the date she turned in her uniform and asked about her retirement account.

{¶ 11}  On July 15, 2019, Kathryn Wozniak, PA-C, completed another MEDCO-14 that indicated the allowed conditions in Banks's claim did not cause Banks to be temporarily and totally disabled and that she could return to appropriate work with restrictions.

{¶ 12}  On August 9, 2019, Banks appealed the DHO's order granting the motion to terminate TTD compensation.  On October 1, 2019, a staff hearing officer ("SHO"), affirmed the DHO's order.  The SHO found that Banks's actions were consistent with abandonment of her employment.  The SHO found that Banks had no intention of returning to her employer, and did not return any phone calls or respond to any documents or offers of employment that were sent to her.  Based on a totality of the circumstances, the SHO determined that those findings support a voluntary abandonment of the workforce.  The SHO also found that there was insufficient medical evidence to support that Banks was disabled as a result of the allowed conditions in her claim.

{¶ 13}  On July 12, 2021, Banks filed a petition requesting this court issue a writ of mandamus to order the commission to deny the motion to terminate her TTD compensation and to issue an order denying that motion.  Alternatively, Banks asks this court to remand this issue to the commission for a rehearing on the merits.  (Compl. at 4.)

{¶ 14}  The magistrate recommended that this court deny Banks's request for a writ of mandamus.  The magistrate rejected Banks's argument that the commission erred in terminating her TTD compensation based on the doctrine of voluntary abandonment

because the newly enacted R.C. 4123.56(F) abrogates that doctrine. The magistrate noted that Banks's injury and final adjudication occurred before the effective date of the new statute, which therefore does not apply. (Mag.'s Decision at 9.) The magistrate similarly rejected Banks's argument that the commission abused its discretion in terminating her TTD compensation retroactively to December 28, 2018, because she had been completely taken off work from December 18, 2018 to January 19, 2019, based on the allowed conditions in the claim. The magistrate found that argument also to be based on R.C. 4123.56(F), which cannot be retroactively applied to Banks's case. *Id.* at 9. The magistrate agreed with the DHO, who found that AAA sent Banks a bona fide offer of light-duty employment, that Banks had never contacted AAA about returning to work, that the offer properly identified the position offered and generally described its duties so that the commission could determine whether the position was consistent with medical restrictions, and that there was some evidence before the commission that Banks refused the good-faith offer. *Id.* at 12. Finally, the magistrate found there was some evidence to support the commission's finding that Banks was not temporarily and totally disabled when the employer made her a good-faith, light-duty job offer. The magistrate noted that the commission weighed all the evidence in the record including several medical reports that indicated that Banks could return to work, provided the restriction of no use of her injured left hand. *Id.* at 13.

{¶ 15} In response to the magistrate's decision, Banks submitted the following objections:

> (1) The magistrate erred as a matter of law in misinterpreting the voluntary abandonment doctrine as discussed in [*State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890] and [*State ex rel. Ohio State Univ. v. Pratt*, 159 Ohio St.3d 527, 2022-Ohio-4111].
>
> (2) The commission and magistrate never made a finding that Banks voluntarily abandoned the work force and that there is no evidence in the record that suggests she did.
>
> (3) The magistrate erred in finding that the commission had correctly determined that Relator was not disabled at the time the employer made a good faith offer of suitable light duty employment.

> (4) The magistrate incorrectly found that the January 18, 2019 and April 15, 2019 Medco-14s, indicating Relator could work with just her right hand, was some evidence to support the commission's determination that Relator was not temporary and totally disabled at the time the employer made her a good-faith job offer.

## II. ANALYSIS

{¶ 16} To be entitled to relief in mandamus, Banks must establish that she has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that there is a lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 152 (1967). To do so, Banks must demonstrate that the commission abused its discretion in "that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packaging, Inc.*, 31 Ohio St.3d 18, 20 (1987). Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Therefore, to be entitled to a writ of mandamus, Banks must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986). We note that questions of credibility and the weight to be given to evidence are clearly within the discretion of the commission as the fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981).

### A. First and Second Objections to the Magistrate's Decision

{¶ 17} Because they are related and dependent on one another, we now consider Banks's first two objections together. Banks argues that the magistrate erred as a matter of law in misinterpreting the voluntary abandonment doctrine discussed in *Klein* and *Pratt* and that neither the commission nor the magistrate made a finding that she voluntarily abandoned the workforce.

{¶ 18} The laws governing workers' compensation are set forth in Chapter 4123 of the Ohio Revised Code for the general purpose of "provid[ing] that an employee who is injured in the course of employment is entitled to receive 'compensation for loss sustained on account of the injury.'" *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, ¶ 7, quoting R.C. 4123.54(A). R.C. 4123.56 controls compensation in cases of

temporary disability and explicitly outlines circumstances when TTD payments will not be made:

> [P]ayment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A).

{¶ 19} In *Klein*, the Supreme Court of Ohio interpreted R.C. 4123.56 and held that, "when a claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for temporary-total-disability compensation, even if the claimant remains disabled at the time of his separation from employment." *Klein*, 2018-Ohio-3890 at ¶ 29.

{¶ 20} In 2020, the Ohio legislature enacted 2020 Ohio Am.Sub.H.B. No. 81 ("H.B. No. 81") to, in part, supersede judicial decisions applying the voluntary abandonment doctrine from *Klein*. H.B. No. 81 added an entirely new section to R.C. 4123.56, which states:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 21} R.C. 4123.56(F) did not take effect until after Banks's workplace injury and after the commission's final determination to terminate her TTD, and compensation cannot be retroactively applied to this case. (Mag.'s Decision at 6, citing *Pratt* at ¶ 10, fn 2.)

{¶ 22} In *Pratt*, which was decided after the enactment of R.C. 4123.56(F), the Supreme Court explained its prior decision in *Klein*. It held that voluntary abandonment is not simply an employee abandoning their *former position* of employment but abandoning *the workforce*. "[I]n other words," the question is, "do the circumstances indicate that the injured worker would be working—somewhere—but for the injury?" *Pratt*, 2022-Ohio-4111 at ¶ 24. In *Pratt*, the employee had submitted a resignation letter and accepted a job offer with another employer shortly before sustaining an injury at her current workplace. The employer moved the commission to terminate the employee's TTD compensation based on the employee's resignation letter, as proof of her abandoning her former position of employment. The Supreme Court found that the commission did not abuse its discretion by finding no voluntary abandonment because "but for the work injury, Pratt would have been gainfully employed at [the new employer] during the period for which she sought TTD compensation." *Id*. at ¶ 26.

{¶ 23} Here, Banks argues that the magistrate did not properly apply *Klein* and *Pratt* because he looked only to whether Banks voluntarily abandoned her former position, rather than the workforce. We do not agree.

{¶ 24} The magistrate correctly noted, "Pursuant to *Klein* and *Pratt*, the key question is whether the injured worker who is no longer in the former position has abandoned the workforce, not merely abandoned [her] former position." (Mag.'s Decision at 9-10.) The magistrate then found there was evidence in the record from which the commission could determine there was a voluntary abandonment of both Banks's prior employment and the workforce. The determination of voluntary abandonment "requires consideration of all relevant circumstances existing at the time of the alleged abandonment." *Klein* at ¶ 43, citing *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 42 Ohio St.3d 381, 383 (1989). We note that Banks turned in her uniform shortly after her injury and inquired about withdrawing funds from her retirement account. Banks ultimately withdrew the funds from her retirement account and failed to respond to multiple offers of light-duty employment that were consistent with her medical restrictions. Banks admitted that she had received phone calls and documents from AAA but did not respond. This is some evidence in the record for the magistrate and the commission to find

that Banks's wage loss was due to her voluntary abandonment of employment and was not due to her workplace injury.

{¶ 25} We also agree with the magistrate that the absence of evidence that Banks was working anywhere or planned to work anywhere suggests that there was a voluntary abandonment of the workforce, unrelated to her work injury. (Mag.'s Decision at 10). Banks does not contest the findings of both the DHO and the SHO that she did not intend to return to work for AAA, but unlike the employee in *Pratt*, Banks did not offer evidence of another job offer or acceptance of another job offer to signify she had not more broadly abandoned the workforce. *See Pratt* at ¶ 26. While we do not anticipate or expect every injured worker receiving TTD to have a job offer on hand should they choose not to return to employment with their former employer, Banks does not offer any evidence, such as submitted employment applications, that she had sought out alternative employment consistent with her medical restrictions. This serves as further indication that she had voluntarily abandoned the workforce.

{¶ 26} Banks argues that the magistrate and commission erred in finding that she had voluntarily abandoned her former position on December 28, 2018 because she was unable to work at that time as the result of the allowed conditions in her claim. However, as the magistrate concluded, this argument is based on R.C. 4123.56(F), which we have determined is inapplicable here, rather than on the law in effect at the time the commission made its determination. Under *Klein* and *Pratt*, this court must look to whether Banks would have been working, somewhere, but for her workplace injury. The magistrate found some evidence to support the commission's finding that Banks voluntarily abandoned the workforce on December 28, 2018, and that her wage loss was due to her voluntary abandonment and not her workplace injury. We agree. Accordingly, we overrule Banks's first and second objections to the magistrate's decision.

**B. Third and Fourth Objections to the Magistrate's Decision**

{¶ 27} We now turn to Banks's objections regarding AAA's job offers of light-duty work. Under R.C. 4123.56(A), TTD payments shall not be made "when work within the physical capabilities of the employee is made available by the employer or another employer." In *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, ¶ 13, the Supreme Court held that R.C. 4123.56(A) must be read in pari

materia with Ohio Adm.Code 4121-3-32(A)(6), which provides, " '[j]ob offer' means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence." "Suitable employment" simply means "work which is within the employee's physical capabilities." Ohio Adm.Code 4121-3-32(A)(3).

{¶ 28} Banks first argues that the magistrate erred in determining that there was some evidence in the record to support the commission's determination that Banks was not temporarily and totally disabled at the time AAA made its offers of employment. Banks also argues that the magistrate erred in finding that the January 18, 2019 and April 15, 2019 MEDCO-14s, which indicated that Banks could work with just her right hand, were some evidence to support the commission's determination that Banks was not temporarily and totally disabled at the time the employer made her a good-faith job offer. We consider these arguments together.

{¶ 29} Mandamus is an extraordinary remedy. It is well-established that mandamus will not lie where there is some evidence to support the finding of the Industrial Commission. *See State ex rel. Mees v. Indus. Comm.,* 29 Ohio St.2d 128, 131 (1972). Where there is no evidence upon which the commission could have based its factual findings, the commission abuses its discretion and mandamus becomes appropriate. *State ex rel. Hutton v. Indus. Comm.* 29 Ohio St.2d 9, 13 (1972), *State ex rel. Kramer v. Indus. Comm.,* 59 Ohio St.2d 39, 42 (1979). An abuse of discretion is present only "[w]here there is no evidence upon which the commission could have based its factual conclusion." *State ex rel. Teece v. Indus. Comm.,* 68 Ohio St.2d 165, 167 (1986).

{¶ 30} Banks has not met this high burden. The magistrate correctly concluded there is no abuse of discretion here because there is some evidence in the record to suggest that Banks was not temporarily and totally disabled when she was offered light-duty employment consistent with her medical restrictions. The magistrate noted that the commission is entitled to weigh evidence in the record and that, in doing so, it found the MEDCO-14s from January 18, 2019 and April 15, 2019 to be credible. The DHO found that those two reports indicated "that [Banks] was able to work with restrictions, having no use of her left hand." (Record at 282.) We agree with the magistrate that those reports constitute some evidence to support the commission's determination. While Banks points to other MEDCO-14s that she argues show she was unable to work or return to her former

position we will not endeavor to reweigh the evidence in place of the commission. "The commission is solely responsible for evaluating evidentiary weight and credibility." *State ex rel. Hart v. Indus. Comm.,* 66 Ohio St.3d 95, 97 (1993), citing *Burley,* 31 Ohio St.3d 18, 20-21; *State ex rel. Ohio Bell Tel. Co. v. Krise*, 42 Ohio St.2d 247, 254 (1975). Therefore, we find no error in the magistrate's decision and no abuse of discretion by the commission.

{¶ 31} Banks also argues that AAA's offers of light-duty work were not made in good faith, since one of the offers was made prior to when the December 18, 2018 MEDCO-14 cleared her for work. As the magistrate noted, however, Banks does not identify any case law that indicates that in order for the job offer to be made in good faith it must be offered at specific times. A "job offer" must be made in good faith and be of suitable employment within a reasonable proximity of the injured worker's home. Under Ohio Adm.Code 4121-3-32(A)(6), the job offer "shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job." Here, there was ample evidence in the record to indicate that there was a good faith offer of suitable employment in accordance with law. The light-duty position's job duties were consistent with Banks's medical restrictions, and the job offers clearly specified the duties and physical demands of the job. (Record 237-38, 217.) The job offers also indicated work hours, pay, and allowed breaks. *Id.* The magistrate correctly determined that there was some evidence before the commission to support that Banks, who failed to respond to the job offers from AAA, refused a good-faith job offer.

{¶ 32} Ultimately, Banks has failed to demonstrate that she has a clear legal right to the relief she has requested and that the commission had a clear legal duty to provide that relief. *See Klein* at ¶ 44. Accordingly, we overrule Banks's third and fourth objections to the magistrate's decision.

{¶ 33} While we do not agree with Banks's objections to the magistrate's decision and do not issue a writ of mandamus here, we note that the magistrate's findings of fact stated that Banks's requested relief was for "this court [to] issue a writ of mandamus ordering the commission to vacate its order that denied claimant's request for TTD compensation, and to issue an order granting claimant's request for TTD compensation." (Mag.'s Decision at 5.) However, Banks's complaint requested this court to "issue a full [w]rit of [m]andamus denying the [m]otion, or in the alternative, a [l]imited [w]rit,

remand[ing] this issue back to the Industrial Commission for re-hearing on the merits." (Compl. at 4.) Thus, the magistrate's findings of fact number 15 is inaccurate. Accordingly, we strike the language "ordering the commission to vacate its order that denied claimant's request for TTD compensation, and to issue an order granting claimant's request for TTD compensation" and insert "denying employer's motion, or in the alternative, remand this issue back to the commission for rehearing on the merits." Apart from said stricken phrase, we adopt the remainder of the magistrate's factual findings with the inserted language.

## III. CONCLUSION

{¶ 34} Following an independent review of this matter, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we overrule Banks's four objections to the magistrate's decision and adopt the magistrate's decision, including the findings of fact and conclusions of law contained therein, as our own with the substitution of the finding of fact stating Banks's requested relief as discussed above. In accordance with the magistrate's decision, we deny Banks's request for a writ of mandamus.

*Writ of mandamus denied.*

JAMISON and LELAND, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Tanisha S. Banks, | : | |
| Relator, | : | |
| v. | : | No. 21AP-341 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on March 17, 2023

*Nager, Romaine & Schneiberg Co., LPA, Jerald A. Schneiberg,* and *C. Bradley Howenstein,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 35} Relator, Tanisha Banks ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied claimant's request for temporary total disability ("TTD") compensation, and to issue an order granting claimant's request for TTD compensation. The commission has also filed a March 25, 2022, motion to strike portions of claimant's reply brief that raised new arguments.

Findings of Fact:

{¶ 36} 1. On December 18, 2018, claimant sustained an injury in the course of her employment with respondent AAA Stamping, Inc. ("employer"), when her hand was caught in a press. Her workers' compensation claim was allowed for the following conditions: avulsion fracture of middle phalanx, left third finger; amputation through middle phalanx, left second finger; two-thirds loss of use of left second finger; major depression disorder moderate, single episode with anxious distress; and post-traumatic stress disorder.

{¶ 37} 2. On December 18, 2018, the date of the injury, Nick Lukens, M.D., completed a Physician's Report of Work Ability ("MEDCO-14"), which indicated claimant could return to work on January 19, 2019, and claimant could not return to work until cleared by orthopedics.

{¶ 38} 3. On December 28, 2018, while traveling to her employer's location, she passed the plant manager on the street and handed her uniform to the manager and asked for information to obtain retirement forms. Subsequently, claimant completed the retirement forms and received the funds that she had contributed to her account.

{¶ 39} 4. On January 9, 2019, the employer mailed a certified letter to claimant offering her a light-duty job, and described the position. The letter indicated that the days, hours, and pay would be the same as her former position. Claimant refused the letter.

{¶ 40} 5. On January 18, 2019, claimant's treating physician, Harry A. Hoyen, M.D., completed a MEDCO-14, indicating claimant was able to work with restrictions, with no use of her left hand.

{¶ 41} 6. Claimant applied for TTD compensation, and on February 11, 2019, the Ohio Bureau of Workers' Compensation ("BWC") awarded TTD compensation from December 19, 2018, through February 12, 2019, continuing upon submission of medical evidence. The employer did not appeal this order, and claimant commenced receiving compensation.

{¶ 42} 7. On April 15, 2019, Kathryn Wozniak, PA-C, completed a MEDCO-14, in which she indicated that claimant could not return to her former position of employment but could return to available and appropriate work with restrictions.

{¶ 43} 8. Because claimant had not replied to the January 9, 2019, offer of employment, the employer mailed another letter to claimant in April 2019, offering a light-

duty job position as an office assistant. The letter described the duties, position title, work hours, start date, location, and permitted breaks. Claimant did not respond to the letter.

{¶ 44}  9. On June 4, 2019, the employer filed a C-86 motion to terminate claimant's TTD compensation.

{¶ 45}  10. On July 15, 2019, Wozniak completed another MEDCO-14, in which she indicated that the allowed conditions did not cause claimant to be temporarily and totally disabled. She also indicated that claimant could not return to her former position of employment but could return to available and appropriate work with restrictions.

{¶ 46}  11. A hearing was held before a district hearing officer ("DHO") on July 25, 2019, and in an August 1, 2019, order, the DHO found the following: (1) the C-86 motion filed by employer is granted; (2) TTD compensation is terminated effective December 28, 2018; (3) the evidence and testimony at the hearing supports a finding that claimant voluntarily abandoned her former position of employment, effective December 28, 2018; (4) on December 28, 2018, claimant was en route to employer's business in a vehicle when she passed the plant manager on an auxiliary street, she handed the manager her uniforms through the window, and inquired about obtaining forms for her retirement; (5) claimant completed the retirement forms and received the money that she had contributed into her retirement and cashed the check; (6) although claimant did not indicate to her manager at that time that she had quit, the DHO is not persuaded that it was her intention to ever return to her former position of employment; (7) the January 18 and April 15, 2019, MEDCO-14 reports indicate that claimant was able to work with restrictions, having no use of her left hand; (8) employer tendered a bona fide offer of light-duty employment to claimant, and at no time from December 28, 2018, through the date of the DHO hearing had claimant ever contacted employer about returning to employment within the restrictions as set forth by her physician; (9) the evidence substantiates that claimant was released to return to light-duty employment with restrictions on two separate dates, and claimant never contacted employer with respect to the job offer; (10) claimant confirmed that she had received the offers of light-duty employment and would have returned to work when she felt she was fully able to resume her duties; (11) claimant testified she was very upset by the way she had been treated by employer, advising them the day before the accident that her machine was smoking; (12) claimant believed that if someone had tended

to the machine when she complained about it smoking, her injury would not have happened; (13) the April 15 and July 15, 2019, MEDCO-14 forms specifically indicate that the allowed conditions were not causing claimant to be temporarily and totally disabled; thus, in addition to the voluntary abandonment, the two MEDCO-14 forms fail to substantiate the requested disability as being causally related to the industrial injury; (14) the manifest weight of the evidence supports a finding of voluntary retirement, requiring termination of TTD compensation effective December 28, 2018; and (15) the C-86 motion is granted. Claimant appealed.

{¶ 47} 12. A July 31, 2019, MEDCO-14 from Dominic Haynesworth, M.D., indicated that claimant was unable to work in any capacity from July 31 through October 31, 2019.

{¶ 48} 13. A hearing was held before a staff hearing officer ("SHO") on September 6, 2019. On October 1, 2019, the SHO issued an order affirming the DHO order and granting the employer's motion to terminate TTD compensation, effective December 28, 2018, finding the following: (1) employer's June 4, 2019, C-86 motion is granted; (2) employer has met its burden of proof that claimant abandoned her place of employment effective December 28, 2018, and TTD compensation is terminated as of that date; (3) claimant's actions are consistent with abandonment of her employment, in that on December 28, 2018, claimant was on her way to work to turn in her uniform and resign, passed the plant manager on the street, gave him her uniform, and asked about having her money withdrawn into a retirement account; claimant also completed the necessary forms and received her money from the account; (4) claimant had no intentions of returning to the instant employer in the future; subsequently, the employer attempted to contact claimant on more than one occasion regarding her intentions of returning to work, but claimant never returned any phone calls or responded to any documents sent to her in the mail; (5) when the employer received the January 18 and April 15, 2019, MEDCO-14 forms indicating that claimant could return to work with restrictions, the employer contacted claimant about returning to work, but claimant did not respond; (6) claimant confirmed at the hearing that she received the phone calls and documents from the employer, but did not respond because she intended never to return to work there again because of the injury; and (7) there was insufficient medical evidence to support that claimant was disabled as a result of the allowed conditions of the claim. Claimant appealed.

{¶ 49} 14. On October 18, 2019, the commission refused claimant's appeal.

{¶ 50} 15. On July 12, 2021, claimant filed a complaint for writ of mandamus, requesting that this court issue a writ of mandamus ordering the commission to vacate its order that denied claimant's request for TTD compensation, and to issue an order granting claimant's request for TTD compensation.

{¶ 51} 16. On March 25, 2022, the commission filed a motion to strike portions of claimant's reply brief on the basis that the reply brief raised four new arguments not raised in claimant's merit brief or in the commission's brief.

Conclusions of Law and Discussion:

{¶ 52} The magistrate recommends that this court deny the claimant's request for a writ of mandamus.

{¶ 53} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 54} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 55} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum

medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 56} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 57} R.C. 4123.56(F) does not apply to cases decided by the commission before the effective date of September 15, 2020. *State ex rel. Ohio State Univ. v. Pratt*, ___ Ohio St.3d ___, 2022-Ohio-4111, ¶ 10, fn. 2. As the court in *Pratt* explained, *State ex rel. Klein v. Precision Excavating & Grading Co.,* 155 Ohio St.3d 78, 2018-Ohio-3890, decided September 27, 2018, applies to voluntary-abandonment cases in which the commission issues its final order after *Klein* was decided. *Id.*

{¶ 58} In *Klein*, the claimant suffered an industrial accident on November 5, 2014, and a physician's report indicated he was unable to work from that date through January 5, 2015. The claimant requested TTD compensation. The claimant testified before the DHO that he had been planning to move to Florida prior to the injury, he had told others that he planned to move to Florida prior to the injury, and claimant informed the employer that he was moving to Florida on October 31, 2014, nearly one week before the injury. The DHO granted claimant's TTD compensation claim for the closed period of November 6 through 19, 2014, finding that claimant voluntarily terminated his employment on November 20, 2014, for reasons unrelated to the workplace injuries. The order was affirmed by the SHO, and the commission refused additional appeals. Upon a writ of mandamus, this court

concluded that, because claimant was medically unable to return to work, he was unable to voluntarily abandon his employment on that date.

{¶ 59} The Supreme Court of Ohio, overruling aspects of prior case law, reversed this court's decision, reasserting the fundamental tenet of eligibility for TTD compensation that the injury must cause the claimant's loss of earnings. The court in *Klein* explained that "when a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation." *Id.* at ¶ 19, citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 38. The court further explained that, "In those circumstances, the voluntary abandonment—and not the injury—causes the loss of wages." *Id.* Thus, "an employee who quit[s] his job for reasons unrelated to his workplace injury [i]s ineligible for temporary-total-disability compensation." *Id.* at ¶ 20, citing *State ex rel. McGraw v. Indus. Comm.*, 56 Ohio St.3d 137 (1990). "[I]t would not serve the purpose of temporary-total-disability compensation to award compensation to a worker whose own actions, and not his workplace injury, have prevented his return to his former position of employment." *Id.* at ¶ 22, citing *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 43-44 (1987).

{¶ 60} The Supreme Court of Ohio clarified *Klein* in *Pratt*. In *Pratt*, on June 20, 2017, Pratt submitted a letter of resignation to her employer, the Ohio State University, indicating that her last day of work would be July 5. On June 24, she sustained injuries while working for Ohio State. Ohio State allowed her workers' compensation claim. On June 28, Pratt received a written offer of employment from Sweet Carrot, with work to commence in late summer/early fall of 2017, and Pratt accepted the offer. Pratt requested TTD compensation commencing from the date of her injury, and although Ohio State initially granted TTD compensation, Ohio State later asked the commission to terminate TTD compensation based on her resignation letter. A district hearing officer ("DHO") granted the request, finding that Pratt's voluntary departure from employment by virtue of her resignation precluded receipt of TTD compensation. A staff hearing officer ("SHO") vacated the DHO's order and denied Ohio State's request to terminate TTD compensation, citing Sweet Carrot's job offer. The SHO found that Pratt did not voluntarily abandon the workforce when she announced her resignation from employment with Ohio State because, prior to writing the resignation letter, Pratt had been in discussions with Sweet Carrot for

a new job, demonstrating that Pratt did not intend to abandon the workforce. In a mandamus action filed by Ohio State, this court interpreted *Klein* as premising voluntary abandonment on an injured worker's departure from the former position of employment rather than the workforce, and found that employment benefits cannot be provided to a claimant who voluntarily removes herself from her former position of employment for reasons unrelated to the workplace injury. This court granted a writ ordering the commission to vacate its order, awarded TTD compensation through July 5, 2017 (the effective date of Pratt's resignation from Ohio State), and denied compensation for periods thereafter.

{¶ 61} On appeal, in *Pratt*, the Supreme Court of Ohio held that the key question is whether an injured worker who is no longer in the former position has abandoned the workforce, not merely abandoned the former position. Thus, a court must determine whether the surrounding circumstances demonstrate a voluntary abandonment of the workforce—permanent or temporary—such that the injured worker's wage loss is not the result of the work injury. In other words, do the circumstances indicate that the injured worker would be working—somewhere—but for the injury? In making this determination, a court must look at the worker's intent, which may be inferred from words spoken, acts done, and other objective facts, and all relevant circumstances existing at the time of the alleged abandonment.

{¶ 62} In concluding that the circumstances in *Pratt* showed that claimant had not abandoned the workforce and would have been working somewhere but for the injury, the court noted that the commission cited the Sweet Carrot job offer, Pratt's acceptance of that offer, and Pratt's hearing testimony in support of its finding. Thus, the court concluded, because Ohio State failed to show that the commission's order was unsupported by evidence in the record or that it was contrary to law, Ohio State did not establish that the commission abused its discretion.

{¶ 63} R.C. 4123.56(A) provides that payment for TTD compensation "shall not be made" for periods "when work within the physical capabilities of the employee is made available by the employer." In *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, ¶ 13, the Supreme Court held that R.C. 4123.56(A) must be read in pari materia with Ohio Adm.Code 4121-3-32(A)(6), which provides, " '[j]ob offer'

means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence." "Suitable employment" simply means "work which is within the employee's physical capabilities." Ohio Adm.Code 4121-3-32(A)(3). The suitability of a light-duty job offer is a question of fact to be determined by the commission. *State ex rel. Pacheco v. Indus. Comm.*, 10th Dist. No. 15AP-1033, 2017-Ohio-8971, ¶ 17.

**{¶ 64}** Collateral estoppel, or issue preclusion, "prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). The doctrine applies when the fact or issue: (1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. *Id.*

**{¶ 65}** In the present case, claimant first argues that the commission abused its discretion when it terminated TTD compensation on the basis of the judicially created doctrine of voluntary abandonment that has been expressly abrogated by R.C. 4123.56(F). However, as mentioned above, the amended provisions in R.C. 4123.56(F), as amended by H.B. No. 81, do not apply to TTD compensation awards in which the injury and a final adjudication by the commission occurred before the effective date of the new law. *See Pratt* at¶ 10, fn. 2. These are the circumstances in the present case. Therefore, claimant's first argument is without merit.

**{¶ 66}** Claimant next argues the commission abused its discretion when it retroactively terminated TTD compensation to December 28, 2018, on the basis that claimant had allegedly left work for reasons unrelated to the industrial injury on that date, where the undisputed evidence is that claimant had already been taken completely off work on December 18, 2018, through January 19, 2019, based solely on the allowed conditions in the claim. Claimant asserts that when she turned in her uniform on December 28, 2018, she was physically unable to work as the result of her industrial injuries, as evidenced by the December 18, 2018, MEDCO-14 completed by Dr. Lukens that indicated she was not cleared for work by orthopedics and was not able to return to work until January 19, 2019, due to her second finger amputation.

**{¶ 67}** However, claimant's argument is based upon amended R.C. 4123.56(F), which we have found is not applicable to this case. Notwithstanding, the SHO concluded

claimant voluntarily abandoned her place of employment effective December 28, 2018. Pursuant to *Klein* and *Pratt*, the key question is whether the injured worker who is no longer in the former position has abandoned the workforce, not merely abandoned the former position. Thus, a court must determine whether the surrounding circumstances demonstrate a voluntary abandonment of the workforce—permanent or temporary—such that the injured worker's wage loss is not the result of the work injury. As the court in *Pratt* summarized the analysis: Do the circumstances indicate that the injured worker would be working somewhere but for the injury, while looking at the worker's intent, which may be inferred from words spoken, acts done, and other objective facts, and all relevant circumstances existing at the time of the alleged abandonment? In the present case, the circumstances show that claimant abandoned the workforce as of December 28, 2018. There is no evidence that claimant was working anywhere or planned to work anywhere. The SHO found the evidence supporting a voluntary abandonment of employment was the following: (1) claimant was on her way to work to turn in her uniform and resign, passed the plant manager on the street, gave him her uniform, and asked about having her money withdrawn into a retirement account; (2) claimant, in fact, completed the necessary forms and received her money from the account; (3) claimant never returned any phone calls or responded to any documents sent to her in the mail from the employer offering her employment; and (5) claimant confirmed at the hearing that she received the phone calls and documents from the employer, but did not respond. The evidence in the record in this case supports the conclusion that claimant's wage loss was due to her voluntary abandonment of her employment and not her workplace injury. For these reasons, claimant's argument, in this respect, is without merit.

{¶ 68} Claimant next argues that collateral estoppel precludes the commission from retroactively terminating TTD compensation for the period from December 28, 2018, through February 12, 2019. Claimant contends that, on February 11, 2019, a BWC order awarded TTD compensation from December 19, 2018, through February 12, 2019, the order was never appealed by the employer, and compensation was paid. Thus, according to claimant, the BWC order became a final adjudication as to the issue of entitlement to TTD compensation from December 19, 2018, through February 12, 2019. Claimant asserts that the employer cannot fail to avail itself of its available administrative remedy of an appeal of

the BWC order and then wait five months to file a motion that has the effect of setting aside a prior order.

{¶ 69} In *State ex rel. Melott v. Indus. Comm.*, 10th Dist. No. 15AP-1065, 2016-Ohio-8268, ¶ 35-37, the claimant argued that the BWC's failure to raise voluntary abandonment in two instances where the BWC awarded TTD compensation was cause for the application of collateral estoppel to bar the commission from later raising the issue of voluntary abandonment. This court held that with respect to both of the BWC awards for TTD compensation, workforce abandonment was not actually and necessarily litigated and determined by the BWC nor was a finding that relator had not voluntarily abandoned the workforce essential to the judgments of the BWC. This court reasoned that, in fact, the BWC's two orders were not adjudications because the BWC has no authority to adjudicate TTD compensation. The BWC issued its orders awarding TTD compensation rather than referring the matters to the commission for adjudication because TTD compensation was not disputed by the employer or the BWC. Thus, this court held that it is clear that collateral estoppel cannot apply. Therefore, applying the holding in *Melott* to the present case, the BWC's February 11, 2019, award of TTD compensation from December 19, 2018, through February 12, 2019, and the employer's failure to appeal that determination, could not form the basis for a claim of collateral estoppel against the commission to bar it from raising the issue of voluntary abandonment. Thus, claimant's argument, in this respect, is without merit.

{¶ 70} Claimant next argues that the employer's light-duty job offer did not constitute a good-faith job offer of suitable employment that was refused by relator; thus, the commission abused its discretion when it terminated TTD compensation on that basis. Claimant asserts that the written job offer was not dated, no response time was given for claimant to accept or decline the offer, the job offer was not provided to or approved by claimant's physician of record, and there is no written or verbal evidence that claimant refused the job offer.

{¶ 71} However, claimant's arguments belie the evidence. The DHO found the employer tendered a bona fide offer of light-duty employment to claimant, and at no time from December 28, 2018, through the date of the DHO hearing had claimant ever contacted employer about returning to employment within the restrictions as set forth by her

physician, despite her admission that she had received the employer's phone calls and documents in the mail. Claimant testified before the DHO that she was very upset by the way she had been treated by employer. Claimant confirmed in her testimony that she had no intention of returning to the instant employer in the future. Claimant also fails to cite any authority that a good-faith job offer requires that the written offer include a date or a required response time. Furthermore, although claimant contends that the job offer was not provided to or approved by claimant's physician of record, the offer of suitable employment must only identify the position offered and generally describe the duties required so that a claimant, his or her physician, and/or the commission can determine whether the required duties are consistent with the medical restrictions. *State ex rel. Professional Restaffing of Ohio, Inc. v. Indus. Comm.*, 152 Ohio App.3d 245, 2003-Ohio-1453 ¶ 3 (10th Dist.). Here, the offer letters in the record establish the employer identified the position offered and generally described the duties so the commission could determine whether the required duties were consistent with the medical restrictions. The letters variously described the job title, duties, the location, the work hours, and permitted breaks. In addition, insofar as claimant contends that there was no written or verbal evidence that she refused the job offer, this contention is contrary to claimant's testimony that she had no intention of returning to employment with the employer. Claimant also testified that although she received the phone calls and mailed documents describing the offer of employment, she did not answer them. Thus, there was some evidence before the commission to make the determination that claimant refused a good-faith job offer.

{¶ 72} Claimant next argues the commission abused its discretion when it found there was no evidence that claimant was disabled from December 28, 2018, through the date of the SHO hearing on September 6, 2019. In support of the contention that she was either totally disabled or, at a minimum, physically unable to return to her former position of employment from the date of her industrial injury through the SHO hearing, based solely on the allowed conditions in her claim, claimant points to the following: (1) at the time of the September 6, 2019, SHO hearing, there was a July 31, 2019, MEDCO-14 from Dr. Haynesworth that indicated claimant was completely unable to work in any capacity from July 31 through October 31, 2019; (2) at the time of the July 25, 2019, DHO hearing, there was a July 15, 2019, MEDCO-14 on file from Wozniak that indicated claimant was limited to light-duty work from July 15 through December 30, 2019; and (3) MEDCO-14 forms

dated April 15, 2019, January 18, 2019, and December 18, 2018, were on file that either had claimant completely or unable to return to her former position of employment.

{¶ 73} However, the commission weighed all of the evidence in the record and determined that claimant was not disabled at the time the employer made a good-faith offer of suitable light-duty employment. The SHO specifically found credible the January 18, 2018, and April 15, 2019, MEDCO-14 forms that concluded claimant could work with the restriction of no use of the left hand. As explained previously, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as factfinder. These two MEDCO-14 forms provide some evidence to support the commission's determination that claimant was not temporarily and totally disabled at the time the employer made her a good-faith job offer. Therefore, claimant's argument, in this respect, is without merit.

{¶ 74} Finally, the magistrate must address the commission's motion to strike portions of claimant's reply brief that raise new arguments not raised in her merit brief, depriving the commission of an opportunity to reply. The purpose of a reply brief is to afford the party an opportunity to respond to the opposing party's brief, not to raise a new argument for the first time. *Cullinan v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-390, 2016-Ohio-1083, ¶ 19. As a result, a court generally will not consider an argument or issue raised for the first time in a reply brief. *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, ¶ 24; *Russell v. Ryan*, 10th Dist. No. 20AP-176, 2021-Ohio-2505, ¶ 34, citing *State v. E.T.*, 10th Dist. No. 17AP-828, 2019-Ohio-1204, ¶ 62, and *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 6-7; *Ruf v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 20AP-330, 2021-Ohio-4389, ¶ 54, citing *Grounds*. Here, because claimant raised several new arguments for the first time in her reply brief, the magistrate grants the commission's motion to strike those portions of claimant's reply brief that raise these new arguments, and the magistrate has not considered those arguments.

{¶ 75} Accordingly, it is the magistrate's decision and recommendation that this court deny claimant's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).